**Terrence BOYD, Plaintiff,**

v.

**Theresa C. LANTZ, Respondent.**

**Civil Action No. 3:05 CV 1535(CFD).**

United States District Court,
D. Connecticut.

May 7, 2007.

---

4

Craig Yankwitt, Jonathan M. Levine, Silver, Golub & Teitell, Stamford, CT, for Plaintiff.

Richard T. Biggar, Attorney General's Office, Hartford, CT, for Respondent.

## RULING ON PETITION FOR HABEAS CORPUS

DRONEY, District Judge.

Terrence Boyd, the petitioner, is serving a twenty-five year sentence of incarceration at the State of Connecticut's Osborn Correctional Institution after pleading guilty to felony murder, in violation of Conn. Gen.Stat. § 53a–54c. He now seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254[1] on the ground that the respondent, Theresa Lantz, the Commissioner of the Connecticut Department of Correction ("DOC"), wrongly denied him credit toward that sentence, in violation of his federal due process rights.[2] For the reasons that follow, Boyd's petition is granted.

## I. Background[3]

Boyd alleges that DOC violated his due process rights by applying Conn. Gen.Stat. § 18–98d to deny him over six years of credit toward his felony murder sentence. The time line of this case is as follows: Boyd was first arrested and placed in custody on December 15, 1986. Following a jury trial in the Connecticut Superior Court, he was convicted of burglary, larceny, and felony murder. On January 21, 1988, he was sentenced to forty-five years of incarceration for felony murder, fifteen years for burglary, and five years for larceny, with the sentences to run concurrently. On March 6, 1990, the Connecticut Supreme Court vacated Boyd's felony murder conviction.[4] He remained incarcerated on the burglary and larceny convictions. The state brought a new felony murder charge against Boyd, which he challenged pre-trial on double jeopardy grounds in state court. After losing his final appeal in state court,[5] he filed a fed-

---

**1.** Boyd's petition requests relief under both 28 U.S.C. § 2241 and 28 U.S.C. § 2254. Since Boyd challenges the constitutionality of the calculation of his state prison sentence, the Court considers his petition only under 28 U.S.C. § 2254. *Cook v. N.Y. State Div. of Parole,* 321 F.3d 274, 278–79 (2d Cir.2003); *James v. Walsh,* 308 F.3d 162, 166–67 (2d Cir.2002).

**2.** In accordance with 28 U.S.C. § 2254(b)(1)(A), Boyd exhausted available state court remedies prior to filing this petition by seeking state habeas relief. *See Boyd v. Comm'r of Corr.,* 84 Conn.App. 22, 851 A.2d 1209 (2004), *cert. denied,* 271 Conn. 929, 859 A.2d 583 (2004).

**3.** This information is taken from the previous state and federal decisions concerning this case, from the parties' briefs, and from the parties' stipulated facts. It is undisputed unless otherwise noted.

**4.** The Connecticut Supreme Court set aside Boyd's felony murder conviction because of a defect in the State's probable cause hearing. *State v. Boyd,* 214 Conn. 132, 570 A.2d 1125 (1990).

**5.** The Connecticut Supreme Court upheld the trial court's denial of his claim. *State v. Boyd,* 221 Conn. 685, 688–89, 607 A.2d 376 (1992). Boyd appealed this decision to the U.S. Supreme Court, which denied certiorari. *Boyd v. Connecticut,* 506 U.S. 923, 113 S.Ct. 344, 121 L.Ed.2d 259 (1992).

eral habeas petition in the U.S. District Court for the District of Connecticut that reiterated his double jeopardy claim. The district court denied Boyd's petition and the Second Circuit affirmed that decision. *Boyd v. Meachum,* 77 F.3d 60 (2d Cir. 1996). On October 7, 1996, the U.S. Supreme Court denied certiorari to his habeas petition. *Boyd v. Armstrong,* 519 U.S. 838, 117 S.Ct. 114, 136 L.Ed.2d 66 (1996). On January 3, 1997, Boyd completed his state burglary sentence, but remained incarcerated because of his re-prosecution for felony murder. On September 15, 1998 he pled guilty to felony murder, and he was sentenced that day to twenty-five years' incarceration, the sentence provided for in his plea agreement. Boyd has been incarcerated continuously through the present date since his initial arrest and detention on December 15, 1986.

In calculating the pre-sentence credits Boyd was to receive for time served to reduce his second felony murder sentence, DOC (1) awarded Boyd credit from December 15, 1986, the date of his initial arrest, to March 6, 1990, the date his first felony murder conviction was vacated by the Connecticut Supreme Court; (2) awarded Boyd credit from January 3, 1997, the date he finished serving his burglary sentence, through September 15, 1998, the date he pled guilty and was sentenced for his second felony murder conviction; and (3) denied Boyd credit from March 7, 1990, the day after his first felony murder conviction was vacated, to January 3, 1997, the date Boyd finished serving his sentence for burglary. DOC excluded the period between March 7, 1990 and January 3, 1997 because of Conn. Gen.Stat. § 18–98d(a)(1). That statute provides:

Any person who is confined to a ... correctional institution ... because such person is unable to obtain bail or is denied bail ... shall, if subsequently imprisoned, earn a reduction of such person's sentence equal to the number of days which such person spent in such facility from the time such person was placed in presentence confinement to the time such person began serving the term of imprisonment imposed; provided (A) each day of presentence confinement shall be counted only once for the purpose of reducing all sentences imposed after such presentence confinement; and (B) ... this section shall only apply to a person for whom the existence of a mittimus, an inability to obtain bail or the denial of bail is the sole reason for such person's presentence confinement....

Conn. Gen.Stat. § 18–98d(a)(1).

In *Steve v. Commissioner of Correction,* the Connecticut Appellate Court held that Conn. Gen.Stat. § 18–98d prohibits a prisoner who is incarcerated on a separate conviction and awaiting re-prosecution on a previously vacated conviction from receiving credit toward any future sentence arising out of the re-prosecution.[6] 39 Conn.App. 455, 469, 665 A.2d 168 (1995). In calculating Boyd's sentence for his second felony murder conviction, DOC viewed the period after the Supreme Court of Connecticut vacated his first felony murder conviction but before he finished his burglary sentence as falling directly under *Steve,* and hence refused to credit Boyd for this time.

Boyd challenged DOC's denial of this credit through a state habeas petition. The Superior Court denied the petition

---

**6.** The *Steve* court reasoned that permitting such credit would allow a prisoner to improperly receive "double credit" because the time would be credited toward both his valid current sentence and his possible future sentence. *Steve,* 39 Conn.App. at 467–68, 665 A.2d 168.

and the Connecticut Appellate Court affirmed the denial; the Supreme Court of Connecticut then denied certiorari. *Boyd v. Comm'r of Corr.*, 84 Conn.App. 22, 851 A.2d 1209 (2004); *cert. denied*, 271 Conn. 929, 859 A.2d 583 (2004); *Boyd v. Warden*, No. CV000003130, 2002 WL 31758386, 2002 Conn.Super. LEXIS 3676 (Conn.Super.Ct. Nov.15, 2002). In its decision, the Appellate Court held that while *Steve* (applying *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969)) requires DOC to credit a prisoner for time served while the prisoner challenges the underlying conviction up to the time of the reversal of the conviction, Boyd's double jeopardy challenge was a "collateral ... attack after the underlying conviction was clearly vacated and [Boyd] was no longer incarcerated on that conviction." *Boyd*, 84 Conn.App. at 30, 851 A.2d 1209. Since Boyd was challenging his re-prosecution, not his former conviction, *Steve* and Conn. Gen.Stat. § 18–98d prohibited him from receiving "double credit" counted against both his burglary sentence and his future felony murder sentence. *Id.* The Appellate Court found no distinction between Boyd's case and the facts of *Steve*, where the petitioner sought credit for time spent incarcerated for assault while awaiting re-prosecution for robbery and a separate assault charge.[7] *See id.*

In the instant case, Boyd does not disagree that the plain language of Conn. Gen.Stat. § 18–98d, as explained by *Steve*,

requires the result reached by DOC and the Connecticut courts. However, Boyd argues that the statute, as applied to his situation by DOC and the Connecticut courts, violates his constitutional rights.[8] Specifically, Boyd claims that this application of the statute unconstitutionally burdened his right to bring a pre-conviction double jeopardy challenge to his re-prosecution. In light of this, Boyd seeks credit for the duration of his double jeopardy challenge.[9]

## II.  Discussion

### A.  Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a habeas petition filed after April 24, 1996 may not be granted unless the state court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The U.S. Supreme Court has narrowly defined the term "clearly established Federal law" to mean "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71–72, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003). Further, these governing principles must stem from the Court's holdings, not mere dicta. *Yarborough v. Alvarado*,

7. As discussed later in this opinion, Steve did not assert a double jeopardy claim. *See Steve*, 39 Conn.App. at 467–69, 665 A.2d 168.

8. The Supreme Court of Connecticut denied certiorari to Boyd's claim, *Boyd v. Comm'r of Corr.*, 271 Conn. 929, 859 A.2d 583 (2004), so the Connecticut Appellate Court is the highest state court that issued a decision on his petition. *See Boyd v. Comm'r of Corr.*, 84 Conn. App. 22, 851 A.2d 1209 (2004).

9. Boyd's memorandum in support of his petition recognizes that his double jeopardy litigation concluded on October 6, 1996, but he did not complete his burglary sentence until January 3, 1997. Because Boyd's arguments focus on DOC's application of Conn. Gen. Stat. § 18–98d to deny him time-served credit for the duration of his double jeopardy challenge, the Court's analysis addresses only that period of time, and not the extra three months between the conclusion of that litigation and the end of Boyd's burglary sentence.

541 U.S. 652, 660–61, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004).

A state court's decision may be "contrary to" clearly established federal law in two ways. First, a state court decision is contrary to clearly established state law "if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor,* 529 U.S. 362, 412–13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Second, the state court decision fails this test "if it applies a rule that contradicts the governing law set forth by [the Supreme Court]." *Brown v. Payton,* 544 U.S. 133, 141, 125 S.Ct. 1432, 161 L.Ed.2d 334 (2005).

Habeas relief is also proper if the state court's decision constitutes an "unreasonable application" of clearly established law. This occurs "if the state court applie[d] [the Supreme Court's] precedents to the facts in an objectively unreasonable manner." *Id.* This means that, while the state court correctly identified the governing federal law, the state court's application of it was objectively unreasonable. *Williams v. Taylor,* 529 U.S. 362, 408, 409, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (O'Connor, J., delivering the opinion of the Court). "Relief may also be available under this prong if the state court ... unreasonably fails to extend a legal rule to a context in which the rule reasonably should apply." *Serrano v. Fischer,* 412 F.3d 292, 296–97 (2d Cir.2005) (citing *Kennaugh v. Miller,* 289 F.3d 36, 45 & n. 2 (2d Cir.2002)).

AEDPA's "unreasonable application" requirement provides significant protection to state court decisions, because it prevents a federal court from granting a habeas petition merely because the state court's application of federal law was incorrect. *Williams,* 529 U.S at 411, 120 S.Ct. 1495 ("Under § 2254(d)(1)'s 'unreasonable application' clause, ... a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."). Although a lower federal court "often [has] an obligation to inform state courts [of] what [it] believe[s] the correct answer [to a constitutional question] to be," *Kruelski v. Conn. Superior Court for the Judicial Dist. of Danbury,* 316 F.3d 103, 105 (2d Cir.2003), "[a] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state court applied clearly established federal law erroneously or incorrectly." *Hoi Man Yung v. Walker,* 468 F.3d 169, 176 (2d Cir.2006) (citing *Williams,* 529 U.S. at 411, 120 S.Ct. 1495). To grant the petition, "[t]he increment of incorrectness beyond error [by the state court] need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Id.* At the same time, however, the federal habeas court "must be able to adequately identify why [it] found the [state-court] decision ... to be objectively unreasonable." *Jimenez v. Walker,* 458 F.3d 130, 147 (2d Cir.2006) (citations omitted).

The reasonableness of a state court's decision must be examined in light of the nature of the federal rule the state court applied. *See Serrano,* 412 F.3d at 297. The applicable "clearly established federal law" "may be either a generalized standard enunciated in the [Supreme] Court's case law or a bright-line rule designed to effectuate such a standard in a particular context." *Kennaugh,* 289 F.3d at 42. While specific, bright-line rules "may not permit much leeway in their interpretation, the same is not true of more general rules, the meaning of which 'must emerge

in application over the course of time.' " *Serrano*, 412 F.3d at 297 (quoting *Yarborough*, 541 U.S. at 664, 124 S.Ct. 2140). Because of this, the "range of judgments [by the state court] that can be deemed 'reasonable' " varies with the contours of the federal rule in question. *Id.*

In light of AEDPA's mandate that federal habeas courts must uphold state courts' incorrect but reasonable interpretations of federal law, a federal habeas court may analyze a state court's decision with a two step test. *Kruelski*, 316 F.3d at 106. If a federal district court adopts this approach,[10] the court should first "determine[ ] ... the correct interpretation of Supreme Court precedent." *Id.* Then, "if the state court's understanding or application of that precedent is determined to be erroneous," the district court must resolve whether that error was reasonable. *Id.* The district court may grant the writ only if it concludes that the state court's decision is objectively unreasonable. *Jimenez*, 458 F.3d at 147.

### B. Substantive Due Process

■ The Due Process Clause of the Fourteenth Amendment "guarantees more than fair process." *Washington v. Glucksberg*, 521 U.S. 702, 719, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997). The Clause's substantive component "provides heightened protection against government interference with certain fundamental rights." *Id.* at 720, 117 S.Ct. 2258; *Reno v. Flores*, 507 U.S. 292, 301–02, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993). It is well-settled that the Fourteenth Amendment "forbids the government to infringe ... 'fundamental' liberty interests *at all*, no matter what process is provided, unless the infringement is narrowly tailored to serve a com-

pelling state interest." *Flores*, 507 U.S. at 302[, 113 S.Ct. 1439] (emphasis in original). The Supreme Court, in many contexts, has confirmed that state burdens on the exercise of fundamental rights will be strictly scrutinized. *Clark v. Jeter*, 486 U.S. 456, 461, 108 S.Ct. 1910, 100 L.Ed.2d 465 (1988) ("classifications affecting fundamental rights are given the most exacting scrutiny" (citation omitted)); *see, e.g., North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) (right of access to courts); *Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969) (right to interstate travel); *United States v. Jackson*, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968) (right to plead not guilty); *Loving v. Virginia*, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967) (right to marry); *Harper v. Virginia State Bd. of Elections*, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966) (right to vote); *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) (right to marital privacy); *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965) (criminal defendant's right not to testify at trial); *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958) (freedom of association); *Skinner v. Oklahoma ex rel. Williamson*, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942) (right to have children); *Meyer v. Nebraska*, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923) (right to educate children).

■ Fundamental rights include those guaranteed by the Bill of Rights. *See Pac. Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 34, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991) (Scalia, J., concurring in the judgment) (noting that "although the Court resisted for some time the idea that 'fundamental

---

10. This two-step approach is appropriate, but not mandatory, for federal district courts. *Kruelski,* 316 F.3d at 106 n. 3.

fairness' necessarily included the protections of the Bill of Rights, it ultimately incorporated virtually all of them [against the states]" (citations omitted)). The Fifth Amendment's Double Jeopardy Clause protects an individual's fundamental right not to be "subject for the same offence to be twice put in jeopardy." [11] U.S. Const. amend. V. In addition to prohibiting successive punishments for the same offense, "the Double Jeopardy Clause ... is a guarantee against being twice put to trial for the same offense." *Abney v. United States,* 431 U.S. 651, 660–61, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977) (emphasis in original); *see Flanagan v. United States,* 465 U.S. 259, 266, 104 S.Ct. 1051, 79 L.Ed.2d 288 (1984) ("The right guaranteed ... is more than the right not to be convicted in a second prosecution ... it is the right not to be 'placed in jeopardy'—that is, the right not to be tried."). It is well settled that an individual's double jeopardy rights may be fully vindicated only through a pre-trial challenge to the prosecution. *Abney,* 431 U.S. at 662, 97 S.Ct. 2034 ("[I]f a criminal defendant is to avoid exposure to double jeopardy and thereby enjoy the full protection of the Clause, his double jeopardy challenge to the indictment must be reviewable before that subsequent exposure occurs."); *see United States v. Olmeda,* 461 F.3d 271, 278 (2d Cir.2006) (discussing *Abney* ); *United States v. Aliotta,* 199 F.3d 78, 82 (2d Cir.1999) ("[The Clause's] protection would be forever lost if a criminal defendant were forced to en-

dure a second trial before an appeal could be taken."). The Supreme Court's inclusion of double jeopardy challenges as one of only three narrow grounds for interlocutory appellate review in criminal cases highlights the necessity of pre-trial review to protect double jeopardy rights.[12] *United States v. Hollywood Motor Car Co.,* 458 U.S. 263, 265, 102 S.Ct. 3081, 73 L.Ed.2d 754 (1982) (citing *United States v. MacDonald,* 435 U.S. 850, 98 S.Ct. 1547, 56 L.Ed.2d 18 (1978)). Since pre-trial review is necessary to protect double jeopardy rights, the right to assert a pre-trial challenge to a prosecution is implicit in the Clause's guarantee. *Flanagan,* 465 U.S. at 266, 104 S.Ct. 1051 ("[T]he asserted rights [in double jeopardy challenges] would be irretrievably lost if review were postponed until trial is completed.").

### C. Substantive Due Process and Conn. Gen.Stat. § 18–98d

■ Boyd claims that Conn. Gen.Stat. § 18–98d, as applied to his case by DOC and the Connecticut courts, unconstitutionally burdened his due process right to seek pre-trial vindication of his double jeopardy rights. In *Joyner v. Dumpson,* 712 F.2d 770 (2d Cir.1983), the Second Circuit established a three part test to assess substantive due process challenges to legislative action. *See Nicholson v. Scoppetta,* 344 F.3d 154, 180 (2d Cir.2003) (reaffirming *Joyner* test). First, the court should assess whether a fundamental right is at stake. *Joyner,* 712 F.2d at 777. Second,

---

**11.** The Supreme Court has specifically held that the Double Jeopardy Clause of the Fifth Amendment is applicable to the states. *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969); *see Monge v. California,* 524 U.S. 721, 727, 118 S.Ct. 2246, 141 L.Ed.2d 615 (1998) (re-affirming this principle).

**12.** Interlocutory appeals may be taken in criminal cases only to vindicate rights under

the Double Jeopardy Clause, the Speech or Debate Clause, and for pre-trial denials of bail reduction. *United States v. Hollywood Motor Car Co.,* 458 U.S. 263, 265–66, 102 S.Ct. 3081, 73 L.Ed.2d 754 (1982); *see Helstoski v. Meanor,* 442 U.S. 500, 99 S.Ct. 2445, 61 L.Ed.2d 30 (1979) (Speech or Debate Clause); *Abney,* 431 U.S. at 660, 97 S.Ct. 2034 (double jeopardy); *Stack v. Boyle,* 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 3 (1951) (bail).

the court should determine whether the statute burdens the fundamental right. *Id.* Finally, the court must "analyze whether an important state interest justifies the infringement." *Id.* Boyd's claim satisfies the first prong of this test because, as discussed above, the Double Jeopardy Clause protects a criminal defendant's right to challenge a prosecution in advance of trial.

Boyd's claim also satisfies the test's second prong. Boyd argues that the statute places a price—in the form of an effectively much longer prison sentence—on the exercise of double jeopardy rights by criminal defendants who, while incarcerated for other crimes on sentences to run concurrent to the sentence for the vacated conviction, are re-prosecuted after successfully appealing that conviction. The State's decision to re-prosecute Boyd left him with three choices. He could have (1) pled guilty, (2) gone to trial, or (3) challenged the re-prosecution on double jeopardy grounds. Only the third option, which Boyd chose, would fully protect Boyd's due process and double jeopardy rights. *Abney*, 431 U.S. at 662, 97 S.Ct. 2034; *see Flanagan*, 465 U.S. at 266, 104 S.Ct. 1051. However, bringing this challenge also kept Boyd within Conn Gen.Stat. § 18–98d's classification of pre-trial prisoners ineligible for credit toward a subsequent re-conviction, because he was still serving the sentence for his burglary conviction when

he brought the challenge, and his first felony murder conviction had been vacated. *Boyd*, 84 Conn.App. at 30, 851 A.2d 1209 (citing *Steve*, 39 Conn.App. at 469, 665 A.2d 168). The Connecticut courts used this basis to uphold DOC's denial of credit for the six and a half years Boyd spent litigating his double jeopardy challenge from prison prior to the completion of his burglary sentence. *Id.* However, this application of the statute penalized Boyd for bringing his double jeopardy challenge because the challenge effectively postponed the second felony murder prosecution and prevented Boyd from receiving concurrent sentence credit on the felony murder charge. If Boyd had instead pled guilty immediately, or submitted to re-prosecution and been convicted, under the statute he would have received credit for all of his time in prison after the conviction, regardless of the fact that he may have still been serving his burglary sentence. *See Steve*, 39 Conn.App. at 469, 665 A.2d 168. Since the application of Conn. Gen.Stat. § 18–98d to a defendant in Boyd's position will result in a substantially longer period of incarceration should the defendant choose to exercise his double jeopardy rights,[13] the Court concludes that the statute, as applied in this narrow factual context, burdens such a defendant's fundamental due process right to challenge his re-prosecution.[14] *See United States v.*

---

**13.** The Court notes that while the exercise of a defendant's fundamental right to plead not guilty would have similar consequences under DOC's application of the statute, the speedy trial rights of a defendant maintaining his innocence would protect him from serving a vastly greater term of uncredited imprisonment. *U.S. Const. amend.* VI (guaranteeing criminal defendants "the right to a speedy and public trial"); Conn. Gen.Stat. § 54–82m (mandating criminal trials to commence within a maximum of twelve months from arrest or filing date of indictment or information); *see* 18 U.S.C. § 3161 (requiring federal crimi-

nal trials to commence within seventy days of indictment or information). In contrast, a defendant asserting his pre-trial double jeopardy rights receives no such guaranteed limitation on his exposure to uncredited time, which, given the course of such litigation, will often be at least several years.

**14.** Arguably, Connecticut sentencing judges could take the Connecticut Appellate Court's interpretation of Conn. Gen.Stat. § 18–98d into account when sentencing a defendant after a re-conviction under the unusual circumstances presented here, and credit the

*Goodwin,* 457 U.S. 368, 372, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982) ("To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort."); *North Carolina v. Pearce,* 395 U.S. 711, 724, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) ("the imposition of ... a punishment penalizing those who choose to exercise constitutional rights would be patently unconstitutional") (citations omitted); *United States v. Jackson,* 390 U.S. 570, 583, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968) ("Congress cannot impose [ ] a penalty in a manner that needlessly penalizes the assertion of a constitutional right. . . . A procedure need not be inherently coercive in order that it be held to impose an impermissible burden upon the assertion of a constitutional right."); *Griffin v. California,* 380 U.S. 609, 614, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965) (holding unconstitutional, in the context of the Fifth Amendment privilege against self-incrimination, "a penalty imposed by courts for exercising a constitutional privilege" because "[i]t cuts down on the privilege by making its assertion costly").

Finally, this burden on double jeopardy rights is not justified by a sufficiently compelling government interest. Although the State has not directly addressed this issue, the State's brief seems to argue that Conn. Gen.Stat. § 18–98d protects the State's interest in preventing convicted defendants from receiving undeserved "double credit" for time spent in prison. In *United States v. Markus,* the Second Circuit held that while a prisoner is entitled to receive time-served credit from a vacated conviction toward a separate valid sentence, a prisoner is not "entitled as of right to apply one punishment to all offenses." 603 F.2d 409, 412 (2d Cir.1979) (discussing *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969)). This holding avoids a rule that would "entitl[e] a prisoner to [d]ouble credit for time served." *Id.* In *Steve,* the Connecticut Appellate Court applied *Markus's* reasoning to hold that Conn. Gen.Stat. § 18–98d validly "eliminates credit for time spent in custody while serving a sentence on another charge after the successful appeal and while awaiting retrial." *Steve,* 39 Conn.App. at 467–68, 469, 665 A.2d 168. The Connecticut Appellate court relied upon *Steve* and the reasoning in *Markus* to deny Boyd's petition, and the State now opposes Boyd's petition in light of these decisions.

The Court recognizes the strong interest of the State of Connecticut in sentencing individuals who are convicted of crimes under Connecticut law, and, if the Connecticut legislature so chooses, in preventing convicted defendants from receiving time-served credit exceeding that required by the U.S. Constitution. *See Pearce,* 395 U.S. at 718–19, 89 S.Ct. 2072 ("[T]he constitutional guarantee against multiple pun-

---

defendant for the lost sentencing credit period. This did not occur when Boyd was re-sentenced, however. The state court sentenced Boyd to twenty-five years for his second felony murder conviction; he had been sentenced by the same judge to forty-five years for his first felony murder conviction. However, the sentencing judge made clear he was not reducing the sentence from forty-five years to twenty-five to credit the time Boyd spent challenging the second felony murder prosecution on double jeopardy grounds. At the second sentencing, counsel for Boyd and the State also made clear, for purposes of appeal, that DOC might use Conn. Gen.Stat. § 18–98d to deny Boyd credit for the years he pursued his double jeopardy challenge before he completed his burglary sentence. Noting this uncertainty, the sentencing judge warned Boyd that DOC might deny Boyd the credit. Finally, although the sentencing judge gave Boyd concurrent sentences for his burglary, larceny, and first felony murder convictions, at the second sentencing the court did not need to address whether the new sentence was concurrent or consecutive because the prior larceny and burglary sentences had been completed.

ishments for the same offense absolutely guarantees that punishment already exacted must be fully credited in imposing sentencing upon new conviction for the same offense."). However, the State did not show that this interest justifies the burden the Connecticut Appellate Court's application of Conn. Gen.Stat. § 18–98d imposed on Boyd's double jeopardy rights. *See Foucha v. Louisiana*, 504 U.S. 71, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992) (placing the burden on the state to prove justification of a state statute's infringement on fundamental liberty interest). *Steve*, heavily relied upon by the Connecticut Appellate Court's decision in *Boyd* and by the State's briefs here, did not address this problem because, in that case, the defendant did not challenge his re-prosecution on double jeopardy grounds. *See Steve*, 39 Conn.App. at 469, 665 A.2d 168 ("there is no constitutional basis for the petitioner to claim double credit"). While the general validity of Connecticut's interest in preventing "double counting" is undisputed, the record does not provide sufficient justification for the burden imposed on Boyd's exercise of this particular fundamental right. Unlike many other fundamental constitutional rights that may be fully exercised and vindicated post-conviction, the aspect of the double jeopardy right that prohibits re-prosecution and allows for interlocutory appeals of the denial of that claim is what makes this case different. Thus, Boyd has satisfied *Joyner's* third prong.

Based on this analysis, the Court concludes that Conn. Gen.Stat. § 18–98d, as applied to Boyd, violated his constitutional right to bring a double jeopardy challenge to his re-prosecution for felony murder. The Connecticut Appellate Court erred in upholding DOC's denial of credit under *Steve*. As discussed above, however, AEDPA requires more than mere error by the state court.

### D. AEDPA

■ The Court grants Boyd's petition because the Connecticut Appellate Court's decision is objectively unreasonable in light of clearly established federal law. *See Williams*, 529 U.S. at 408, 409, 120 S.Ct. 1495. The Court reaches this conclusion for two reasons.

■ First, the Connecticut Appellate Court "unreasonably failed to extend a clearly established, Supreme Court defined, legal principle to a situation[ ][in] which that principle should have, in reason, governed." *Kennaugh*, 289 F.3d at 45. As discussed above, it is clearly established that a criminal defendant's right to bring a pre-trial challenge to a re-prosecution is a fundamental right guaranteed by the Double Jeopardy Clause. *Flanagan*, 465 U.S. at 266, 104 S.Ct. 1051; *Abney*, 431 U.S. at 662, 97 S.Ct. 2034 (holding that double jeopardy rights include the right to pre-trial review). It is also well-settled that the substantive due process component of the Fourteenth Amendment protects the exercise of fundamental rights from unjustified government interferences. *Flores*, 507 U.S. at 301–02, 113 S.Ct. 1439. The Connecticut Appellate Court, however, failed to recognize that DOC's application of Conn. Gen.Stat. § 18–98d should be analyzed in light of its effect on Boyd's ability to exercise this fundamental right. *See Boyd*, 84 Conn.App. at 30, 851 A.2d 1209. The Connecticut Appellate Court applied its reasoning in *Steve* to analyze Boyd's claim. *Boyd*, 84 Conn.App. at 28–30, 851 A.2d 1209. The court found Boyd's double jeopardy challenge significant only to the extent that it constituted a collateral attack, rather than a direct appeal of Boyd's underlying conviction; because of this, the court concluded, Boyd's claim fell directly under *Steve*, and DOC properly denied

credit under the statute. *Id.* at 30, 851 A.2d 1209. In *Steve,* however, the petitioner had not asserted a double jeopardy challenge to his re-prosecution. The *Steve* court, in applying Conn. Gen.Stat. § 18–98d to deny Steve credit, explicitly noted that "there is no *constitutional basis* for the petitioner to claim double credit" for that period. 39 Conn.App. at 469, 665 A.2d 168 (emphasis added). Because of this crucial factual difference, *Steve* provides no guidance where the statute's application burdens the exercise of a fundamental constitutional right. Nonetheless, despite this significant difference in the type of rights asserted by the petitioners in each case, the *Boyd* court used *Steve's* basic holding to deny Boyd's habeas petition. *Boyd,* 84 Conn.App. at 30, 851 A.2d 1209. The Connecticut Appellate Court should have recognized that Boyd's double jeopardy challenge distinguished his case from *Steve* and altered the analysis of his claim.[15] The court should have analyzed Boyd's claim in light of the clearly established constitutional principles that protect Boyd's right to bring such a pre-trial challenge. *See Glucksberg,* 521 U.S. at 720, 117 S.Ct. 2258; *Flores,* 507 U.S. at 301–02, 113 S.Ct. 1439; *Flanagan,* 465 U.S. at 266, 104 S.Ct. 1051; *Abney,* 431 U.S. at 662, 97 S.Ct. 2034; *Olmeda,* 461 F.3d at 278 (discussing *Abney* ); *Aliotta,* 199 F.3d at 82 (same). The Connecticut Appellate Court's failure to apply these holdings ren-

ders its decision objectively unreasonable.[16]

Second, the Connecticut Appellate Court's failure to analyze Boyd's claim in light of clearly established federal law constitutes an unreasonable error despite the broad nature of the right at issue. Unlike many other rights for which the Supreme Court has identified bright-line rules, a defendant's right to bring a pre-trial double jeopardy challenge remains a broad principle of constitutional law. *See Flanagan,* 465 U.S. at 266, 104 S.Ct. 1051; *Abney,* 431 U.S. at 662, 97 S.Ct. 2034; *Olmeda,* 461 F.3d at 278 (discussing *Abney* ); *Aliotta,* 199 F.3d at 82; *see also Kennaugh,* 289 F.3d at 42 (citing *Gilchrist v. O'Keefe,* 260 F.3d 87 (2d Cir.2001) (analyzing habeas petition in light of general right to counsel holding in *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) and bright-line application of that rule in *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975))). Because of this, for AEDPA purposes, the range of reasonable judgment by a state court considering the right is similarly broad. *Yarborough,* 541 U.S. at 664, 124 S.Ct. 2140 ("Applying a general standard to a specific case can demand a substantial element of judgment."). "The more general the rule, the more leeway [state] courts have in reaching outcomes in case-by-case determinations." *Id.; see Serrano,* 412 F.3d at 297 (discussing *Yar-*

**15.** In a similar context, the Connecticut Supreme Court explicitly made an exception to the plain language of Conn. Gen.Stat. §§ 18–98a and 18–98b to avoid infringing on prisoners' double jeopardy rights. *Wright v. Commissioner,* 216 Conn. 220, 224–25, 578 A.2d 1071 (1990).

**16.** There is no question that Boyd presented and fully developed this constitutional double jeopardy issue in his state petition for habeas corpus and in his papers before the Connecticut Appellate Court; as such, even though the Connecticut Appellate Court did not fully ana-

lyze Boyd's petition, he sufficiently exhausted this claim in state court. *Morgan v. Bennett,* 204 F.3d 360, 369 (2d Cir.2000) ("In order to exhaust his claim before the state's highest court, a [habeas petitioner] must give that court a fair opportunity to pass on his federal claim."); *see* 28 U.S.C. § 2254(b)(1)(A) (requiring such exhaustion); *see also Torres v. Berbary,* 340 F.3d 63, 68 (2d Cir.2003) (noting that AEDPA's deferential standard of review does not apply if the state court did not adjudicate the federal claim on the merits).

*borough* ). Here, as discussed above, the Connecticut Appellate Court failed to analyze Boyd's claim in light of governing, clearly established federal law protecting his asserted right. *See Boyd*, 84 Conn. App. at 30, 851 A.2d 1209. Even considering the broad nature of the right Boyd asserted, the Connecticut Appellate Court's failure to consider the protections guaranteed to him by clearly established law falls outside the wide range of reasonable judgments protected by AEDPA's stringent standards. As such, the court's decision is objectively unreasonable, and granting Boyd's petition is appropriate.

### III. Conclusion

As explained above, DOC's application of Conn. Gen.Stat. § 18–98d unjustifiably burdened Boyd's clearly established fundamental due process right to challenge his re-prosecution on double jeopardy grounds. The Connecticut Appellate Court's failure to consider and resolve the significant constitutional question raised by this application of the statute elevates the defects in the court's decision beyond mere error. Accordingly, the issuance of a writ of habeas corpus is proper, and Boyd's petition for a writ of habeas corpus [docket # 1] is GRANTED. Judgment shall enter for the petitioner.

SO ORDERED.