******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

EVELEIGH, J., with whom, McDONALD, J., joins, concurring and dissenting. I fully join parts II, III, IV, V, and VI of the majority opinion with the exception of the majority's conclusion that "[w]hen the trial court has improperly instructed the jury and the improper instruction cannot be considered harmless because there is no way of knowing whether the finder of fact would have reached the same conclusion if it had been properly instructed, the proper remedy generally is to remand the case to the trial court for a new trial without considering whether the evidence presented at the first trial was sufficient to support the verdict." See footnote 12 of the majority opinion. I also respectfully dissent from part I of the majority opinion, however, because, in my view, even if the trial court's refusal to give the proposed instruction of the named defendant, The Boy Scouts of America Corporation,[1] on § 302 B of the Restatement (Second) of Torts was improper, that error was harmless. Indeed, although the majority appears to recognize the harmless error standard, it fails to conduct any detailed analysis as to whether the trial court's failure to give the defendant's proposed instruction was harmful in the present case. Furthermore, although the majority does not reach the question of whether the award of damages was excessive because it concludes that the present case must be remanded for a new trial, I would reach this issue and conclude that the trial court did not abuse its discretion in denying the defendant's motion to set aside the verdict and an order for a new trial or remittitur. Accordingly, after careful review of the record and the parties' claims, I am persuaded that I would affirm the judgment of the trial court in favor of the plaintiff, John Doe, which it rendered in accordance with the jury's verdict, on all counts except for the plaintiff's claim under the Connecticut Unfair Trade Practices Act (CUTPA). See General Statutes § 42-110a et seq.

I agree with the facts and procedural history as set forth in the majority opinion. I will provide additional facts as necessary.

I

The following facts are necessary to an understanding of the parties' claims. After the presentation of evidence had concluded, the defendant submitted a request to charge the jury that contained the following proposed instructions: "The plaintiff claims that [his patrol leader] Siegfried Hepp engaged in intentional misconduct with him. As a general matter, the [defendant is] not responsible for anticipating the intentional misconduct of a third party, in this case Hepp, unless [it] knew or had reason to know of Hepp's propensity for misconduct from 1976 to 1978. . . .

"The first exception to the rule that the [defendant is] not responsible for anticipating the intentional misconduct of Hepp unless [it] knew or should have known of his propensity for misconduct is when the [defendant's] own conduct created or increased the foreseeable risk that the plaintiff would be harmed by the misconduct of a third party.

"In order to answer that question, you should consider all of the following factors: the known character, past conduct, and tendencies of Hepp; the temptation or opportunity which the [defendant's] conduct may afford him for such behavior; the gravity of the harm which may result; and the possibility that some other person will assume the responsibility for preventing the conduct or the harm, together with the burden of the precautions which the [defendant] would be required to take. Where the risk is relatively slight in comparison with the utility of the [defendant's] conduct, [it] may have no obligation to act." (Citation omitted.) The trial court declined to instruct the jury in accordance with the defendant's request and, instead, gave a standard negligence instruction.

Assuming, for the sake of argument, that the majority is correct in concluding that the trial court's failure to give the instruction on § 302 B of the Restatement (Second) of Torts, as proposed by the defendant, was improper, I disagree that such an impropriety requires reversal. "We have repeatedly recognized that [i]t is axiomatic . . . that not every error is harmful. . . . [W]e have often stated that before a party is entitled to a new trial . . . he or she has the burden of demonstrating that the error was harmful. . . . An instructional impropriety is harmful if it is likely that it affected the verdict. . . . In determining whether an instructional impropriety was harmless, we consider not only the nature of the error, including its natural and probable effect on a party's ability to place his full case before the jury, but the likelihood of actual prejudice as reflected in the individual trial record, taking into account (1) the state of the evidence, (2) the effect of other instructions, (3) the effect of counsel's arguments, and (4) any indications by the jury itself that it was misled." (Internal quotation marks omitted.) *Allison* v. *Manetta*, 284 Conn. 389, 400, 933 A.2d 1197 (2007). Thus, in my view, a new trial would be necessary only if the defendant could establish on appeal that the trial court's refusal to give the requested instruction constituted harmful error. In other words, in order to establish reversible error, the defendant must prove that the jury likely would have returned a verdict in its favor had the requested instruction been given.

In support of its position that the present case should be remanded for a new trial, the majority cites this court's decision in *McDermott* v. *State*, 316 Conn. 601, 113 A.3d 419 (2015). See footnote 12 of the majority

opinion. I disagree with the majority's reliance on *McDermott* and find the facts of that case to be distinguishable from the present case.

First, unlike the present case, *McDermott* did not involve a claim of instructional impropriety. In *McDermott*, the relevant certified question before this court was whether "the Appellate Court properly reverse[d] the judgment of the trial court on the basis that the trial court incorrectly found that the [defendant] had assumed a greater duty of care than that reflected in industry custom or standards." (Internal quotation marks omitted.) Id., 607. Thus, unlike the present case, the issues arising in *McDermott*, which involved a bench trial, did not require this court to conduct an examination of "the [trial] court's entire charge to determine whether it [was] reasonably possible that the jury could have been misled by the omission of the requested instruction." (Internal quotation marks omitted.) *State v. Devalda*, 306 Conn. 494, 505–506, 50 A.3d 882 (2012). In *McDermott*, this court was asked to determine whether the trial court, as the trier of fact, had misunderstood the law, rather than whether the trial court's explanation of the law was apt to mislead a jury. *McDermott v. State*, supra, 316 Conn. 611.

Second, in *McDermott*, the trial court applied an *incorrect* legal standard, rather than an *incomplete* legal standard. In *McDermott*, this court concluded that "the trial court did not make the requisite factual findings necessary to conclude that the defendant had voluntarily assumed a greater duty than that which was legally required . . . [and] that, without these findings, the trial court *improperly applied* the standard set forth in § 323 of the Restatement (Second) of Torts." (Emphasis added.) *McDermott v. State*, supra, 316 Conn. 611. As the majority recognizes, in so concluding, this court reasoned as follows: "We have often stated that, a party is generally entitled to a new trial when, on appeal, a different legal standard is determined to be required, *unless we conclude that, based on the evidence, a new trial would be pointless*." (Emphasis added.) Id. As a result of its conclusion, this court held that it was "necessary to remand the case to the trial court for a new trial to allow the parties to present their cases with the correct legal standard in mind and to allow the trial court to evaluate the facts in light of this correct legal standard." Id.

Third, although the majority offers a purported interpretation of *McDermott*, nowhere in the *McDermott* decision did we say that a new trial would be ordered "without considering whether the evidence presented at the first trial was sufficient to support the verdict." See footnote 12 of the majority opinion. In my view, a harmful error analysis must be performed, particularly when the trial court has given an accurate, albeit arguably incomplete, charge on the law.

In the present case, the negligence instruction that the trial court gave the jury was a correct statement of the law. In fact, it was taken almost completely verbatim from the model civil jury instructions that appear on the Judicial Branch website. See Connecticut Civil Jury Instructions (4th Ed. 2008) § 3.6-7, available at https://www.jud.ct.gov/JI/civil/Civil.pdf (last visited September 29, 2016).[2] Even assuming that the trial court's instruction to the jury regarding negligence in the present case was *incomplete*, it certainly was not an *inaccurate* statement of the law and, thus, does not automatically warrant a new trial. See *Allison* v. *Manetta*, supra, 284 Conn. 400 (concluding that trial court's instruction was "incomplete," but, nevertheless, examining whether trial court's refusal to give defendant's proposed instruction constituted harmful error).

The majority states that "[w]hen the trial court has improperly instructed the jury and the improper instruction cannot be considered harmless because there is no way of knowing whether the finder of fact would have reached the same conclusion if it had been properly instructed, the proper remedy generally is to remand the case to the trial court for a new trial without considering whether the evidence presented at the first trial was sufficient to support the verdict." See footnote 12 of the majority opinion. This statement contains an internal inconsistency because it is unclear how a court can determine whether an improper instruction can be considered harmless without also "considering whether the evidence presented at the first trial was sufficient to support the verdict." Id. This statement contains a further internal inconsistency by mentioning harmlessness but then stating that a case should be remanded when "there is no way of knowing whether the finder of fact would have reached the same conclusion if it had been properly instructed . . . ." Id. A reviewing court cannot determine whether the finder of fact likely would have reached the same conclusion if it had been properly instructed without first conducting a harmless error analysis.

Despite the fact that the majority appears to recognize the applicability of harmless error analysis to the present case, it fails to provide any detailed analysis as to whether the trial court's alleged instructional error was, in fact, harmful. This court has, however, previously applied harmless error analysis in civil cases involving claims of instructional impropriety. See, e.g., *National Publishing Co.* v. *Hartford Fire Ins. Co.*, 287 Conn. 664, 688, 949 A.2d 1203 (2008) (concluding that trial court's refusal to give defendant insurer's requested instruction on special defense of late notice was harmful error in action for breach of insurance contract); *Allison* v. *Manetta*, supra, 284 Conn. 400–402 (concluding, following examination of evidence presented at trial, that trial court's refusal to instruct jury

on defendant's theory of sovereign immunity constituted harmful error); see also *DeMatteo* v. *New Haven*, 90 Conn. App. 305, 312, 876 A.2d 1246 (concluding that defendant had "failed to satisfy its burden of establishing that the [instructional] impropriety was harmful in that it likely affected the result of the trial"), cert. denied, 275 Conn. 931, 883 A.2d 1242 (2005). In my view, rather than automatically remanding the present case for a new trial, this court should conduct a harmless error analysis. I am persuaded that such an analysis would demonstrate that "based on the evidence, a new trial would be pointless."[3] *McDermott* v. *State*, supra, 316 Conn. 611.

As explained previously herein, "[i]n determining whether an instructional impropriety was harmless, we consider not only the nature of the error, including its natural and probable effect on a party's ability to place his full case before the jury, but the likelihood of actual prejudice as reflected in the individual trial record, taking into account (1) the state of the evidence, (2) the effect of other instructions, (3) the effect of counsel's arguments, and (4) any indications by the jury itself that it was misled." (Internal quotation marks omitted.) *Allison* v. *Manetta*, supra, 284 Conn. 400.

As this court recognized in *Doe* v. *Saint Francis Hospital & Medical Center*, 309 Conn. 146, 179–80, 72 A.3d 929 (2013), "[i]t is not possible to state definite rules as to when the actor is required to take precautions against intentional or criminal misconduct. As in other cases of negligence . . . it is a matter of balancing the magnitude of the risk against the utility of the actor's conduct. Factors to be considered are the known character, past conduct, and tendencies of the person whose intentional conduct causes the harm, the temptation or opportunity which the situation may afford him for such misconduct, the gravity of the harm which may result, and the possibility that some other person will assume the responsibility for preventing the conduct or the harm, together with the burden of the precautions which the actor would be required to take. Where the risk is relatively slight in comparison with the utility of the actor's conduct, he may be under no obligation to protect the other against it. [2 Restatement (Second), Torts § 302 B, comment (f), p. 93 (1965)]." (Internal quotation marks omitted.) The relevant portion of the defendant's proposed charge included the factors set forth in § 302 B of the Restatement (Second) that were cited in *Saint Francis Hospital & Medical Center*.

I begin with a review of the state of the evidence in this case. At the trial in this matter, the defendant did not present evidence concerning each of the factors enumerated in comment (f) to § 302 B of the Restatement (Second). Instead, at trial, the defendant focused primarily upon the known character, past conduct, and tendencies of Hepp to commit sexual abuse.

Specifically, the defendant presented the testimony of a local scouting leader, Robert Gyle, whose son participated in scouting activities with both Hepp and the plaintiff. Gyle testified that he was unaware that Hepp was engaging in inappropriate sexual conduct with the other boys in the scouting program. The defendant did not focus on the other factors and, notably, did not present evidence as to the burden of implementing policies aimed at preventing sexual abuse during scouting activities.

Furthermore, a review of the state of the evidence demonstrates that the evidence on the other factors supports the plaintiff's claim. First, I agree with the majority that the evidence the plaintiff presented at trial "was sufficient to establish a prima facie case that the defendant should have realized the likelihood that [its] conduct would create a temptation which would be likely to lead to [sexual abuse]." (Internal quotation marks omitted.) As the majority states, the "plaintiff presented evidence that the defendant engaged in the affirmative acts of promoting and endorsing [scouting] activities, such as overnight camping, that created opportunities for sexual abuse." As the majority further recognizes, the Boy Scout Handbook in effect at the relevant time stated that "[p]atrols do lots of things outdoors. They go hiking and camping. These hikes and camps must be approved by your [s]coutmaster ahead of time. Some patrols go overnight camping by themselves. Your patrol can, too, if you have a patrol leader your [s]coutmaster will approve as an overnight camping leader." Although Gyle testified that going on unsupervised overnight camping trips was not the usual practice of the local council, the plaintiff testified that the adult leaders did not camp in the same area as the patrol and that the patrol leader was left in charge of the scouts.

Second, as I will discuss in greater detail in part II of this concurring and dissenting opinion, the plaintiff presented evidence demonstrating that he suffered severe emotional and psychological harm. Although the defendant attempted to show that other negative factors in the plaintiff's life might have contributed to these injuries, it does not dispute the gravity of those injuries.

Third, a jury could reasonably infer from the extensive testimony relating to the defendant's secrecy as to its knowledge of the prevalence of sexual abuse during scouting activities, as documented in the ineligible volunteer files,[4] that there was a slim "possibility that some other person [would] assume the responsibility for preventing the conduct or the harm . . . ." 2 Restatement (Second), supra, § 302 B, comment (f). For instance, Nate Marshal, the assistant director of registration service for the defendant, testified that, to the best of his knowledge, the defendant has never engaged in the practice of circulating a list of individuals deemed to

be ineligible to participate in its programs, or otherwise notifying the local councils of these reported incidents of misconduct, regardless of whether there had been a criminal conviction. In fact, Marshal explained that it is the defendant's policy not to send copies of the ineligible volunteer files to the local councils, notwithstanding a request from the local council for such documentation. In addition, there was evidence presented that the defendant controlled the training programs for the local councils. For example, Louis D. Salute, a representative of the state council, testified that the local councils are not permitted by the defendant to create their own guidelines for training adult leaders. Salute testified as follows: "We follow the national training. The . . . only latitude that we have is, for instance, to require training, which we have done. But we can't add to or subtract from the training program."

Finally, I agree with the majority "that a reasonable person would [not] be compelled to conclude that taking precautions against the risks would have been so unduly burdensome that the defendant reasonably could not have been expected to do so."[5] As explained previously herein, the defendant did not present any evidence regarding the burden of the precautions it would be required to take.

Thus, in my view, an instruction on the factors set forth in § 302 B of the Restatement (Second) likely would not have affected the jury's verdict in the present case because, based on the present record, the plaintiff likely would have sustained his burden to prove that the defendant owed the plaintiff a duty of reasonable care and that the defendant's failure to take precautions against sexual abuse in scouting activities proximately caused the plaintiff's injuries. Accordingly, this factor weighs in favor of sustaining the jury's verdict.

Turning to the second prong of a harmless error analysis, I examine the effect of other instructions on the outcome of this case. See *Allison* v. *Manetta*, supra, 284 Conn. 400. Specifically, the instructions on the element of duty and the special defense of superseding cause relate to the charge requested by the defendant.

The defendant's proposed charge read in relevant part as follows: "The first exception to the rule that the [defendant is] not responsible for anticipating the intentional misconduct of Hepp unless [it] knew or should have known of his propensity for misconduct is when the [defendant's] *own conduct* created or increased the *foreseeable* risk that the plaintiff would be harmed by the misconduct of a third party." (Emphasis added.)

In my view, the trial court's instruction on duty encompasses the substance of this portion of the defendant's proposed charge. The trial court's instruction regarding the element of duty provided in relevant part:

"A duty to use care exists when a reasonable person, knowing what the [defendant] here either knew or should have known at the time of the alleged conduct, *would foresee that the harm of the same general nature as that which occurred here was likely to result from that conduct. If harm of the same general nature as that which occurred here was foreseeable, it does not matter if the manner in which the harm that actually occurred was unusual, bizarre or unforeseeable.*" (Emphasis added.) Both the defendant's proposed charge and the trial court's instruction on the element of duty are couched in terms of foreseeability.

Moreover, I am not swayed by the defendant's contention that, by not instructing the jury on the factors set forth in § 302 B of the Restatement (Second), the trial court essentially instructed the jury that the defendant could be held "strictly liable for any injury that occurs in scouting." The trial court did not instruct the jury that the defendant could be held liable for any injury occurring during scouting activities. The defendant's liability extended only to *reasonably foreseeable injuries*—those stemming from sexual abuse committed by adult volunteers or other scouts during such activities.

Contrary to the defendant's contention, I further find that the trial court's instruction on superseding cause made clear to the jury that it had to find a causal link between the defendant's conduct and the plaintiff's injuries, such that a mere bystander could not be held liable for the plaintiff's injuries. The trial court's instruction regarding the defendant's special defense of superseding cause provided in relevant part as follows: "The defendant in a defense filed in this case claims that . . . [it] did not legally cause the plaintiff's alleged injury because the injury was produced, in material part, by a superseding cause.

"Now a superseding cause is an intentional harmful act, force of nature, or criminal event, unforeseen by the defendant, which intervenes in the sequence of events leading from the defendant's alleged negligence to the plaintiff's alleged injury and proximately causes that injury. Under our law, the intervention of such a superseding cause prevents the defendant from being held liable for the plaintiff's injuries on the theory that, due to such superseding cause, the defendant did not legally cause the injury even though [its] negligence was a substantial factor in bringing the injury about. Therefore, when a claim of superseding cause is made at trial, the plaintiff must disprove at least one essential element of that claim by a fair preponderance of the evidence in order to prove, by that standard, its own conflicting claim of legal causation.

"In this case, the defendant claims, more particularly, that Hepp's alleged intentional harmful act of sexually assaulting the plaintiff while both were [in the scouting

program] was a superseding cause of the plaintiff's alleged injury, and, thus . . . that [its] own negligence did not legally cause that injury. Because such intentionally harmful conduct, if unforeseeable by the defendant, would constitute a superseding cause of the plaintiff's alleged injury if it occurred as claimed by the defendant and if it proximately caused the plaintiff's injury, the plaintiff must disprove at least one essential element of that claim by a fair preponderance of the evidence in order to prove that the defendant legally caused that injury.

"The plaintiff can meet this burden by proving one of the following: one, that the conduct claimed to constitute a superseding cause did not occur as claimed by the defendant, either because it did not occur at all or because it was not engaged in with the intent to cause harm; two, *that such conduct was foreseeable by the defendant, in that the injury in question was within the scope of the risk created by the defendant's conduct*; or three, that such conduct . . . was not a substantial factor in bringing about the plaintiff's alleged injury." (Emphasis added.)

The language of the trial court's instruction regarding the special defense of superseding cause is substantially similar to the language of the defendant's proposed charge. Neither party disputes that the plaintiff was abused by Hepp during scouting activities and this fact was a central part of the plaintiff's theory. Furthermore, neither party challenges the fact that the sexual abuse the plaintiff suffered at the hands of Hepp was a substantial factor in bringing about his injuries. Accordingly, in order to prove that the defendant legally caused his injuries pursuant to the trial court's instructions, the plaintiff had to prove that Hepp's sexual abuse of the plaintiff "was foreseeable by the defendant, in that the injury in question was within the scope of the risk created by the defendant's conduct . . . ." This portion of the jury charge essentially mirrors the language of the defendant's proposed charge, which, as stated previously, read in relevant part as follows: "The first exception to the rule that the [defendant is] not responsible for anticipating the intentional misconduct of Hepp unless [it] knew or should have known of his propensity for misconduct is when the [*defendant's*] *own conduct created or increased the foreseeable risk that the plaintiff would be harmed* by the misconduct of a third party."[6] (Emphasis added.)

The trial court's omission of the defendant's proposed instruction on the factors set forth in § 302 B of the Restatement (Second) did not prevent the defendant from establishing that it had not been negligent in failing to take precautions against sexual abuse in light of its knowledge of the ineligible volunteer files. Therefore, in my view, even assuming the trial court's instructions were incomplete, the standard negligence instruction

given by the trial court did not prevent the jury from making key factual findings that likely would have affected the verdict in the present case. Accordingly, I would conclude that the second prong of the harmless error analysis—the effect of other instructions—weighs against reversing the judgment of the trial court and ordering a new trial.

I now turn to the third prong of the harmless error analysis—the effect of counsel's argument. See *Allison* v. *Manetta*, supra, 284 Conn. 400. My review of the transcript of defense counsel's opening argument demonstrates that he did not frame his theory of the case in terms of factors set forth in § 302 B of the Restatement (Second). In his opening argument, rather than focus upon the question of whether the defendant's conduct created or increased the risk that the plaintiff would be harmed by Hepp, defense counsel argued that, contrary to the plaintiff's claim, the ineligible volunteer files did not give the defendant "special knowledge about sexual abuse . . . ." Specifically, with respect to the ineligible volunteer files, defense counsel argued that: (1) "in the 1970s, the [defendant] had no more knowledge than anyone else about [the] sexual abuse of children"; (2) "the purpose of the ineligible volunteer files [was] to keep the bad guys out, not to study them, not to collect data on them, not to psychoanalyze them"; and (3) the ineligible volunteer files contain information about "adult volunteers who are accused of improper conduct . . . not about [children] who are alone together engaging in inappropriate conduct." Only the first argument, namely that the defendant did not have more knowledge about sexual abuse than other youth organizations at the time, relates to the question of whether the defendant's conduct created or increased the risk of harm to the plaintiff.[7] Furthermore, in his opening argument, defense counsel asked the jury to consider whether other factors in the plaintiff's life may have caused his injuries, rather than Hepp's sexual abuse of the plaintiff. Therefore, it was not evident from the defendant's opening argument that it intended to present evidence with respect to each of the factors set for in § 302 B of the Restatement (Second).

Finally, there is no indication in the record that the jury was confused or misled. For instance, there is no evidence that the jury requested to be recharged or submitted notes to the court requesting clarification of the charge. Thus, I would conclude that the defendant has failed to satisfy its burden to show that it is likely that the trial court's omission of the defendant's proposed instruction affected the verdict. Accordingly, I would affirm the judgment of the trial court.

II

Because I would conclude that the trial court's omission of the defendant's proposed instruction was harmless, I would reach the merits of the defendant's claim

that the trial court improperly denied its motion to set aside the verdict and order a new trial or remittitur.

On appeal, the defendant claims that the trial court abused its discretion in denying its motion to set aside the verdict and order a new trial or remittitur because the jury's compensatory damages awards for the plaintiff's claims of negligence and negligent infliction of emotional distress were excessive as a matter of law. Specifically, the defendant claims that the total $7 million compensatory damages award "should shock the conscience of [this] court." The defendant further contends that the jury's award of $4 million for the plaintiff's negligence claim should be remitted because it is duplicative of the jury's award of $3 million for the plaintiff's negligent infliction of emotional distress claim. In response, the plaintiff contends that the award was neither shocking nor inconsistent with the evidence that had been adduced at trial. I agree with the plaintiff.

"Our analysis of this claim is guided by certain governing principles, which are applicable when reviewing appeals regarding motions to set aside a verdict as well as motions for remittitur. Because an award of damages is a matter peculiarly within the province of the trier of facts, we have held consistently that a court should exercise its authority to order a remittitur rarely—only in the most exceptional of circumstances. . . . In determining whether to order remittitur, the trial court is required to review the evidence in the light most favorable to sustaining the verdict. . . . Upon completing that review, the court should not interfere with the jury's determination except when the verdict is plainly excessive or exorbitant. . . . The ultimate test which must be applied to the verdict by the trial court is whether the jury's award falls somewhere within the necessarily uncertain limits of just damages or whether the size of the verdict so shocks the sense of justice as to compel the conclusion that the jury [was] influenced by partiality, prejudice, mistake or corruption. . . . The court's broad power to order a remittitur should be exercised only when it is manifest that the jury [has] included items of damage which are contrary to law, not supported by proof, or contrary to the court's explicit and unchallenged instructions. . . .

"Furthermore, [t]he decision whether to reduce a jury verdict because it is excessive as a matter of law . . . rests solely within the discretion of the trial court. . . . [Consequently], the proper standard of review of a trial court's decision to grant or deny a motion to set aside a verdict as excessive as a matter of law is that of abuse of discretion. . . . Accordingly, the ruling of the trial court on the motion to set aside the verdict as excessive is entitled to great weight and every reasonable presumption should be given in favor of its correctness." (Citations omitted; internal quotation marks omitted.) *Patino* v. *Birken Mfg. Co.*, 304 Conn. 679, 705–706, 41

A.3d 1013 (2012).

A careful examination of the record reveals that there was ample evidence from which the jury could reasonably have concluded that the plaintiff suffered serious, debilitating, and continuing emotional and psychological injuries as a result of the sexual abuse. At trial, the plaintiff described the three separate incidents of sexual abuse he suffered when he was about ten or eleven years old at the hands of Hepp during camping trips, including exposure to pornography, sodomy, and fellatio. The plaintiff testified that, following the third incident, which involved Hepp performing anal sex on him, he stopped participating in scouting activities. The plaintiff further explained that these incidents made him feel "ashamed" and "degraded" and that, as a result, he chose not to share his experience with anyone until recently and continues to experience great difficulty recounting these events. He testified that these incidents have adversely affected his relationships with others, including receiving physical affection from his mother. He further testified that he is currently receiving psychological treatment and that the psychological injury he suffered has manifested itself in acts of self-harm and drug abuse.

In addition, the plaintiff called Jeffrey Deitz, a psychiatrist, who provided expert testimony about the continued effects of sexual abuse on the plaintiff, including the increased likelihood that victims of childhood sexual abuse, like the plaintiff, will turn to substance abuse as a form of self-medication[8] and the fact that a history of such abuse often leads to the disruption of the victims' relationships with their loved ones. Deitz explained that he had met with the plaintiff on two occasions to evaluate him and determine whether the sexual abuse the plaintiff endured as a child during scouting activities had a continued effect on him. Deitz opined that it was "excruciatingly difficult" for the plaintiff to speak about the incidents of abuse and that "the entire interview was riddled with anxiety."[9] Deitz stated that the plaintiff's reaction during their meeting indicated the considerable degree of distress he was still experiencing as a result of the abuse. Deitz concluded that the abuse the plaintiff suffered adversely affected multiple aspects of his development, including "normal adolescent development." Deitz further concluded that the plaintiff's difficulty being intimate, his inability to have physical contact with his mother,[10] and his aversion to taking direction from authority figures could be attributed to past sexual abuse. Deitz then testified that the plaintiff had been diagnosed with bipolar disorder and that there is a well established link between the development of bipolar disorder and childhood sexual abuse. Finally, Deitz opined, to a reasonable degree of medical probability, that the plaintiff's battle with suicidal ideation[11] was substantially caused by the sexual abuse he endured during scouting activi-

ties and that he could benefit from psychological therapy.

Furthermore, I disagree with the defendant's contention that the jury's damages award for negligent infliction of emotional distress is duplicative of their award for the plaintiff's general negligence claim.[12] I am persuaded that the plaintiff's general negligence claim sets forth a claim for relief separate and apart from the plaintiff's negligent infliction of emotional distress claim.[13] The jury reasonably could have found that the plaintiff had also sustained a physical injury as a result of the incidents of sexual abuse. It was within the jury's common knowledge that acts of sexual abuse involve a considerable physical injury to a minor child. See *Doe* v. *Hartford Roman Catholic Diocesan Corp.*, 317 Conn. 357, 375, 119 A.3d 462 (2015) (noting that "[j]urors are not expected to lay aside matters of common knowledge or their own observation and experience of the affairs of life, but, on the contrary, to apply them to the evidence or facts in hand, to the end that their action may be intelligent and their conclusions correct" [internal quotation marks omitted]). Thus, in my view, it is reasonable to believe that the jury's award for the general negligence claim reflects their view of fair compensation for the actual physical intrusion itself and, therefore, does not constitute duplicative recovery.

Construing the evidence in the light most favorable to sustaining the verdict, I would conclude that the record at trial was sufficient to support the jury's compensatory damages award. See *Patino* v. *Birken Mfg. Co.*, supra, 304 Conn. 705. Both the trial court, and this court, "are bound by the jury's credibility determinations and all *reasonable* inferences the jury could have drawn from the evidence." (Emphasis in original.) *Saleh* v. *Ribeiro Trucking, LLC*, 303 Conn. 276, 290, 32 A.3d 318 (2011); see also *Thomas* v. *Katz*, 171 Conn. 412, 415, 370 A.2d 978 (1976) ("[T]he question whether there was sufficient evidence [to support the verdict] is for the jury, who [has] the sole province of weighing the evidence and determining the credibility of the witnesses. . . . The choice of the more credible evidence was for [the jury] to make." [Citations omitted; internal quotation marks omitted.]). The evidence in the present case, when viewed in that light, reveals that the plaintiff has suffered serious physical and psychological injuries as a result of the defendant's negligence and continues to suffer from severe mental distress.

Moreover, the testimony adduced at trial demonstrates that the jury's award of compensatory damages in the present case does not exceed "the necessarily uncertain limits of just damages or . . . so shocks the sense of justice as to compel the conclusion that the jury [was] influenced by partiality, prejudice, mistake or corruption." (Internal quotation marks omitted.) *Saleh* v. *Ribeiro Trucking, LLC*, supra, 303 Conn. 281.

"While the amount of the verdict is substantial, in a relative sense it is no more substantial than the plaintiff's injury." *Pisel* v. *Stamford Hospital*, 180 Conn. 314, 344, 430 A.2d 1 (1980); see also *Mather* v. *Griffin Hospital*, 207 Conn. 125, 139, 540 A.2d 666 (1988) (noting that "[t]he size of the verdict alone does not determine whether it is excessive"). Accordingly, giving due weight to the aforementioned principles, I would conclude that the trial court did not abuse its discretion when it denied the defendant's posttrial motion for remittitur or a new trial.

I would affirm the judgment of the trial court on all counts of the operative complaint except for the count alleging a violation of CUTPA, and would remand the case to the trial court with direction to render judgment in favor of the defendant on the CUTPA claim and to adjust damages accordingly.

Accordingly, I respectfully concur and dissent.

[1] The various other defendants are not parties to the present appeal. See footnote 1 of the majority opinion. In the interest of simplicity, I refer to The Boy Scouts of America Corporation as the defendant. I refer to the defendant's subordinate units, respectively, as state councils and local councils.

[2] This court has previously noted that "the fact that the [J]udicial [B]ranch website contains a disclaimer that the instructions are not necessarily legally sufficient in every case does not suggest that the instructions are legally improper in and of themselves in any given case." *State* v. *Coleman*, 304 Conn. 161, 176 n.5, 37 A.3d 713 (2012).

[3] I note that the majority also cites to *Deroy* v. *Estate of Baron*, 136 Conn. App. 123, 127, 43 A.3d 759 (2012), in support of its position that the present case should be remanded for a new trial. In *Deroy*, the Appellate Court concluded that the trial court improperly "applied a higher legal standard to the question of testamentary capacity than is required under Connecticut law." Id., 125. For the same, aforementioned reasons, I am not persuaded that the reasoning in *Deroy* is applicable to the present case.

[4] As the majority explains, the defendant maintained files at its national headquarters containing information about individuals deemed to be ineligible to volunteer as members of local councils or as adult leaders due to allegations of sexual misconduct during scouting activities.

[5] Frank Reigelman, director of camping and conservation for the defendant, testified that he could not think of anything that would have prevented the defendant from implementing policies to combat the sexual abuse of minor participants in scouting activities at the time the plaintiff sustained his injuries.

[6] The majority takes issue with my observation that the trial court's instruction regarding the special defense of superseding cause is substantially similar to the language of the defendant's proposed charge. Specifically, the majority states that my reliance on the language of the trial court's jury instruction on superseding cause is misplaced because the defendant requested a jury instruction on the element of duty, rather than an instruction on causation. See footnote 10 of the majority opinion. I disagree.

First, I note that it was the defendant who requested a jury instruction on the special defense of superseding cause and that such an instruction, because it relates to a special defense, is favorable to the defendant. Second, as the majority recognizes, when reviewing a challenge to the trial court's jury instruction, this court must "examine the [trial] court's *entire* charge to determine whether it is reasonably possible that the jury could have been misled by the omission of the requested instruction." (Emphasis added; internal quotation marks omitted.) *State* v. *Devalda*, supra, 306 Conn. 505–506. Furthermore, as previously stated herein, this court has specifically stated that "[i]n determining whether an instructional impropriety was harmless, we consider . . . the effect of other instructions . . . ." (Internal quotation marks omitted.) *Allison* v. *Manetta*, supra, 284 Conn. 400. Finally, there is significant overlap between the elements of duty and causation. See, e.g., *Mirjavadi* v. *Vakilzadeh*, 310 Conn. 176, 192, 74 A.3d 1278 (2013)

(noting that foreseeability is considered in context of duty and causation analyses); *Demers* v. *Rosa*, 102 Conn. App. 497, 503–504, 925 A.2d 1165 (The court noted that "[i]n negligence cases . . . in which a tortfeasor's conduct is not the direct cause of the harm, the question of legal causation is practically indistinguishable from an analysis of the extent of the tortfeasor's duty to the plaintiff. . . . Like an analysis of causation, a determination of the nature of the legal duty owed, if any, must be rooted in the fundamental policy of the law that a tortfeasor's responsibility should not extend to the theoretically endless consequences of the wrong." [Citation omitted; internal quotation marks omitted.]), cert. denied, 284 Conn. 907, 931 A.2d 262 (2007). Indeed, the majority, in addressing the defendant's claim that the plaintiff did not present sufficient evidence to support a finding that the defendant's conduct caused the plaintiff's damages, acknowledges this overlap and the fact that the analysis of one factor can be applicable to the other. Specifically, the majority fails to conduct an independent analysis of the defendant's claim relating to causation and, instead, explains that its conclusion "that the plaintiff has made out a prima facie case that the defendant's negligent conduct increased the risk that the plaintiff would be subject to sexual abuse and that the defendant negligently failed to take precautions against this risk . . . is sufficient to establish causation."

[7] On appeal, the defendant makes the related claim that "[t]here was no evidence at trial that the risk of molestation in [its program] was any higher than it was in the general public. [In the absence of] any evidence to the contrary, one can only infer that the degree of risk is no more than it is in society, and that, as a result, the [defendant] should have no greater duty to protect a [child participating in its program] than the rest of society or the [child's] parents." I agree with the majority that the defendant's claim lacks merit.

[8] Deitz testified that the plaintiff has a serious history of substance abuse, including use of alcohol, marijuana, cocaine, and heroin, although he is currently sober and attends Narcotics Anonymous meetings.

[9] Deitz further described his interaction with the plaintiff as follows: "He, literally, had to look away, he was, I would say, ashamed, but, at the very least, we'll say distressed, horribly distressed."

[10] Deitz testified that the plaintiff's "fracture in his relationship with his parents . . . was the result of the forced sexual contact he suffered" during scouting activities.

[11] Deitz testified that, during one of their meetings, the plaintiff had told him that he had attempted suicide shortly after he left the scouting program.

[12] "Connecticut courts consistently have upheld and endorsed the principle that a litigant may recover just damages for the same loss only once. . . . The rule precluding double recovery is a simple and time-honored maxim that [a] plaintiff may be compensated only once for his just damages for the same injury." (Citation omitted; internal quotation marks omitted.) *Chapman Lumber, Inc.* v. *Tager*, 288 Conn. 69, 111, 952 A.2d 1 (2008).

[13] The nature of the damages alleged in the general negligence count of the plaintiff's complaint differs from that set forth in the negligent infliction of emotional distress count. On the one hand, the fourth count of the plaintiff's amended complaint, which sets forth a cause of action for general negligence, alleges that the plaintiff suffered "*serious and permanent physical injury, invasion and damages*, as well as extensive permanent emotional and psychological injuries *arising directly from the physical injury and invasion he suffered*." (Emphasis added.) On the other hand, the fifth count, which sets forth a cause of action for negligent infliction of emotional distress, alleges that the plaintiff suffered "severe emotional distress, resulting in illness and bodily harm" as a result of the defendant's negligence.

It is also noteworthy that the defendant did not file a request to revise or otherwise challenge the plaintiff's general negligence claim as duplicative of the negligent infliction of emotional distress claim. Furthermore, the defendant does not challenge the trial court's jury instructions on damages and has failed to present any facts that would indicate that the jury could not have fairly reached their verdict.

I further note that this court has previously explained that negligence and negligent infliction of emotional distress are two separate theories of liability: "In negligent infliction of emotional distress claims, unlike general negligence claims, the foreseeability of the precise nature of the harm to be anticipated [is] a prerequisite to recovery even where a breach of duty might otherwise be found . . . ." (Internal quotation marks omitted.) *Perodeau* v. *Hartford*, 259 Conn. 729, 754, 792 A.2d 752 (2002).