******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

CRAIG SALAMONE ET AL. *v.* WESLEYAN
UNIVERSITY ET AL.
(AC 43819)

Elgo, Cradle and Flynn, Js.

*Syllabus*

The plaintiffs sought to recover damages from the defendant university for personal injuries they sustained as a result of allegedly being sexually assaulted by B while he was a student at the university and a resident advisor or head resident in a dormitory on the university's campus. The plaintiffs alleged that, when they were between thirteen and fifteen years old, B had sexually assaulted them in his dormitory room after he had arranged to meet them there to teach them exercise and stretching routines. The plaintiffs alleged that their injuries were caused by the university's negligent supervision of B in his capacity as a resident advisor or head resident. The trial court granted the university's motion for summary judgment on the ground that the plaintiffs failed to demonstrate that there was a genuine issue of material fact that the alleged sexual assaults were reasonably foreseeable. From the judgment rendered thereon, the plaintiffs appealed to this court. *Held* that the trial court properly rendered summary judgment in favor of the university, that court having correctly determined that the plaintiffs failed to demonstrate the existence of a genuine issue of material fact as to whether the alleged sexual assaults were reasonably foreseeable, as the university presented undisputed evidence that B had no criminal history, complaints or accusations either before or during his tenure as a student and resident advisor or head resident at the university, and the plaintiffs failed to present any evidence from which it reasonably could be inferred that the university knew or should have known that B would sexually assault them in his dormitory room.

Argued November 9, 2021—officially released February 1, 2022

*Procedural History*

Action to recover damages for, inter alia, the named defendant's alleged negligence, brought to the Superior Court in the judicial district of Middlesex, where the court, *Hon. Edward S. Domnarski*, judge trial referee, granted the named defendant's motion for summary judgment and rendered judgment thereon, from which the plaintiffs appealed to this court. *Affirmed.*

*Eamon T. Donovan*, for the appellants (plaintiffs).

*Richard E. Fennelly III*, with whom were *Jonathan P. Ciottone* and *Eric S. Larson*, for the appellee (named defendant).

*Opinion*

CRADLE, J. The plaintiffs, Craig Salamone and Doug Cartelli, commenced this action, claiming that they were sexually assaulted by a resident advisor or head resident on the campus of the defendant Wesleyan University.[1] In this appeal, the plaintiffs challenge the summary judgment rendered in favor of the defendant on the ground that a genuine issue of material fact existed as to whether the harm alleged was reasonably foreseeable. We affirm the judgment of the trial court.

The record before the court, viewed in the light most favorable to the plaintiffs as the nonmoving parties, reveals the following relevant facts and procedural history. In September, 2017, the plaintiffs commenced this action, claiming that they were sexually assaulted on the defendant's campus between 1982 and 1984. By way of a revised complaint dated September 26, 2018, they alleged that they were sexually assaulted by Andrew Barer, while he was a student and a resident advisor or head resident in a dormitory on the defendant's campus. At the time of the alleged incidents, Barer also "was a member of the official basketball team for the defendant" and "used the basketball facilities located on the property owned by the defendant . . . to engage with minor children, including the plaintiff[s]," who were between the ages of thirteen and fifteen at the time. The plaintiffs alleged that "Barer's . . . engagement with minor children was in the guise of instructing them in plyometrics, stretching, and other physical activity in order to enhance their athletic ability, but, in reality, it was a means to allow him to commit sexual abuse, sexual assault, and sexual exploitation of said minor children." They further alleged that, in the winter of 1983, as to Salamone, and between 1982 and 1984, as to Cartelli, "Barer made arrangements for [each of them] to meet with Barer alone in Barer's dormitory room located in the housing facilities on the [defendant's] campus." They alleged that "Barer's arranging the meeting with [them] in [his] dormitory room was in the guise of teaching [them] exercise and stretching routines when the actual purpose was for Barer to sexually abuse, sexually assault, and sexually exploit [them]." The plaintiffs alleged that Barer allowed them into the dormitory in his capacity as a resident advisor or head resident, and that, at the meetings in Barer's dormitory room, "under the guise of teaching [them] exercise and stretching routines, Barer sexually abused, sexually assaulted, and sexually exploited [them]." The plaintiffs alleged that, prior to the incidents involving them, Barer "engaged in a pattern of behavior wherein he lured other minor children into his dormitory room and sexually abused, sexually assaulted, and sexually exploited them" and that the "general risk of harm or injury of the type suffered by the plaintiff[s] . . . was foreseeable by the defendant . . . ." The plaintiffs

alleged that the defendant "failed to properly monitor and supervise [Barer] in order to prevent injuries to minors such as [them]" and "allowed [Barer] to be alone with [them] inside housing facilities owned by the defendant . . . without monitoring or supervising him in any way."[2] The plaintiffs alleged that, as a result of the defendant's negligence and carelessness, they suffered bodily injury and severe emotional distress.

On April 15, 2019, the defendant filed a motion for summary judgment, claiming that it was entitled to judgment as a matter of law on the grounds that Barer was not an employee of the defendant when the alleged sexual assaults involving the plaintiffs occurred and that those incidents were not reasonably foreseeable. On September 6, 2019, the plaintiffs filed an objection to the defendant's motion for summary judgment, arguing that there existed genuine issues of material fact as to whether Barer was "an agent, servant, and/or employee of the defendant" and whether the defendant had a duty to supervise Barer and to alleviate danger posed to the plaintiffs due to the fact that the defendant knew or should have known of prior instances of Barer engaging in similar conduct. In support of their objection, the plaintiffs submitted affidavits from three individuals, who averred that, prior to the incidents involving the plaintiffs, Barer brought those individuals, who were teenage boys at the time, to his dormitory room on the defendant's campus, "without concealing [their] presence and in plain sight," and sexually assaulted them.

On September 20, 2019, the defendant filed a reply to the plaintiffs' objection to the motion for summary judgment, arguing that the plaintiffs had failed to show that a genuine issue of material fact existed that the alleged sexual assaults were foreseeable because, "[e]ven if Barer brought the affiants into [his] dorm[itory] 'without concealing them' and 'in plain sight,' these facts are insufficient to show that [the defendant] should have known that Barer would likely commit sexual assault." The defendant argued that, because there was no record that Barer had committed any crimes, had never been accused of a crime, had never been accused of unlawful sexual conduct, and had never been the subject of any complaints, there was no evidence demonstrating that the defendant had any reason to know that Barer would engage in the alleged conduct.

On October 3, 2019,[3] the plaintiffs filed a surreply to the defendant's reply to their objection to the motion for summary judgment, reiterating their argument that the affidavits that they previously filed with the court were evidence of prior instances of Barer bringing teenage boys into his dormitory room for the purpose of sexually assaulting them. They contended that such evidence gave rise to a genuine issue of material fact as to whether the defendant knew or should have known

of the danger Barer posed to teenage boys in general and to the plaintiffs specifically.

By way of a memorandum of decision filed on January 8, 2020, the court granted the defendant's motion for summary judgment on the ground that there was no genuine issue of material fact that the alleged sexual assaults of the plaintiffs were not reasonably foreseeable.[4] The court concluded that the defendant did not know or have reason to know that Barer would allegedly sexually assault the plaintiffs in his dormitory room. The court reasoned that the defendant met its burden of demonstrating the absence of any genuine issue of material fact as to the foreseeability of the alleged sexual assaults of the plaintiffs when it submitted evidence indicating that Barer had no criminal history before or during his enrollment as a student at the defendant or before or during his period of allegedly serving as a resident advisor or head resident at the defendant, that it never received any complaints about Barer during his attendance at the defendant, and that it did not locate any records indicating that disciplinary action has ever been taken against him. The court therefore reasoned that the burden shifted to the plaintiffs to present evidence to demonstrate the existence of a factual dispute as to the issue of foreseeability. The court noted the affidavits submitted by the plaintiffs in opposition to summary judgment and reasoned: "With regard to the alleged negligent monitoring or supervision of Barer, the plaintiffs do not submit any additional evidence to suggest that anyone personally witnessed or would have witnessed Barer leading the boys to his dormitory room, that any particular campus security protocols were breached . . . or that anyone reported any suspicious behavior to [the defendant] that would have provided [the defendant] with the requisite knowledge to prompt an investigation.

"Therefore, it appears that the plaintiffs merely rely on (1) the affidavits stating that Barer brought teenage boys . . . to his dormitory room 'without concealing [their] presence and in plain sight' . . . and (2) the broad-brush allegation in their complaint that 'administrators, professional staff, coaching staff, security officers and other employees knew, should have known or could have known upon investigation, that . . . Barer . . . took the plaintiff[s] . . . into his dorm[itory] room . . . on . . . [the defendant's] campus.' . . . Without more evidentiary support to suggest that someone in particular witnessed the incidents or reported Barer's improper conduct to [the defendant], however, this is insufficient to dispute the defendant's evidence demonstrating that [the defendant] had no knowledge that Barer allegedly had or would sexually assault the plaintiffs or anyone else." (Citations omitted; footnote omitted.) On that basis, the court concluded that the plaintiffs failed to demonstrate the existence of a genuine issue of material fact as to whether the

alleged incidents were reasonably foreseeable and, accordingly, rendered summary judgment in favor of the defendant. This appeal followed.

"The fundamental purpose of summary judgment is preventing unnecessary trials. . . . If a plaintiff is unable to present sufficient evidence in support of an essential element of his cause of action at trial, he cannot prevail as a matter of law. . . . To avert these types of ill-fated cases from advancing to trial, following adequate time for discovery, a plaintiff may properly be called upon at the summary judgment stage to demonstrate that he possesses sufficient counterevidence to raise a genuine issue of material fact as to any, or even all, of the essential elements of his cause of action. . . .

"Practice Book § [17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . .

"It is not enough . . . for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court . . . . [T]ypically [d]emonstrating a genuine issue requires a showing of evidentiary facts or substantial evidence outside the pleadings from which material facts alleged in the pleadings can be warrantably inferred. . . . Only if the defendant as the moving party has submitted no evidentiary proof to rebut the allegations in the complaint, or the proof submitted fails to call those allegations into question, may the plaintiff rest upon factual allegations alone. . . .

"[I]ssue-finding, rather than issue-determination, is the key to the procedure. . . . [T]he trial court does not sit as the trier of fact when ruling on a motion for summary judgment. . . . [Its] function is not to decide issues of material fact, but rather to determine whether any such issues exist. . . . Our review of the decision to grant a motion for summary judgment is plenary. . . . We therefore must decide whether the court's conclusions were legally and logically correct and find support in the record." (Internal quotation marks omitted.) *Carolina Casualty Ins. Co.* v. *Connecticut Solid Sur-*

*face, LLC*, 207 Conn. App. 525, 532–33, 262 A.3d 885 (2021).

The following additional legal principles guide our consideration of the plaintiffs' claim that a genuine issue of material fact existed as to whether the harm they allegedly sustained was reasonably foreseeable. "[A]n act or an omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the conduct of the other or a third person which is intended to cause harm, even though such conduct is criminal. . . . [A]s a general matter, a defendant is not responsible for anticipating the intentional misconduct of a third party . . . unless the defendant knows or has reason to know of the third party's criminal propensity. . . .

"[T]here are [however] exceptions to this general rule. More specifically . . . [t]here are . . . situations in which the actor, as a reasonable man, is required to anticipate and guard against the intentional, or even criminal, misconduct of others. In general, these situations arise where . . . the actor's own affirmative act has created or exposed the other to a recognizable high degree of risk of harm through such misconduct, which a reasonable man would take into account. . . . One situation in which the actor will be required to guard against the intentional misconduct of another is [w]here the actor acts with knowledge of peculiar conditions which create a high degree of risk of [such] intentional misconduct. . . . For purposes of this exception, [t]he actor's conduct may be negligent solely because he should have recognized that it would expose [another] person . . . to an unreasonable risk of criminal aggression. If so, it necessarily follows that the fact that the harm is done by such criminal aggression cannot relieve the actor from liability . . . . [Moreover], it is not necessary that the conduct should be negligent solely because of its tendency to afford an opportunity for a third person to commit the crime. It is enough that the actor should have realized the likelihood that his conduct would create a temptation which would be likely to lead to its commission. . . .

"[I]t is not possible to state definite rules as to when the actor is required to take precautions against intentional or criminal misconduct. As in other cases of negligence . . . it is a matter of balancing the magnitude of the risk against the utility of the actor's conduct. Factors to be considered are the known character, past conduct, and tendencies of the person whose intentional conduct causes the harm, the temptation or opportunity which the situation may afford him for such misconduct, the gravity of the harm which may result, and the possibility that some other person will assume the responsibility for preventing the conduct or the harm, together with the burden of the precautions which the actor would be required to take. Where the

risk is relatively slight in comparison with the utility of the actor's conduct, he may be under no obligation to protect the other against it. . . .

"Thus, for purposes of this exception, the issue is twofold: (1) whether the defendant's conduct gave rise to a foreseeable risk that the injured party would be harmed by the intentional misconduct of a third party; and (2) if so, whether, in light of that risk, the defendant failed to take appropriate precautions for the injured party's protection." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Doe* v. *Boy Scouts of America Corp.*, 323 Conn. 303, 316–18, 147 A.3d 104 (2016).

In the present case, the plaintiffs claim that the defendant's supervision of Barer was inadequate and, consequently, gave rise to the foreseeable risk that Barer would sexually assault them. In support of its motion for summary judgment, the defendant presented undisputed evidence that Barer had no criminal record, complaints, or accusations either before or during his tenure as a student at the defendant. As the trial court aptly noted, this undisputed evidence rebutted the plaintiff's allegations that the defendant knew or should have known that Barer would sexually assault the plaintiffs, and the burden then shifted to the plaintiff to demonstrate the existence of a genuine issue of material fact as to foreseeability. In support of their position, the only evidence submitted by the plaintiffs were the affidavits of three individuals who averred that they, like the plaintiffs, had been sexually assaulted by Barer in his dormitory room. Although the affiants averred that they were brought to the defendant's campus prior to the alleged incidents involving the plaintiffs, the affidavits do not contain the circumstances under which they were there or any specifics as to how or when they were brought to the campus, or whether anybody, including a member of the defendant's administration or staff, saw them on campus. Moreover, even if the affiants had been observed by an agent or representative of the defendant on campus or in a dormitory, they did not allege that anybody observed any improper conduct by Barer or was aware that they allegedly were sexually assaulted by Barer at those times. Accordingly, the plaintiffs failed to present any evidence from which it reasonably could be inferred that the defendant knew or should have known that Barer would sexually assault them in his dormitory room.

This case is readily distinguishable from cases in which our Supreme Court has held that the issue of foreseeability involves a fact intensive inquiry that is not amenable to determination on summary judgment but, rather, should be resolved by a jury. For instance, in *Doe* v. *Boy Scouts of America Corp.*, supra, 323 Conn. 303, the court determined that the issue of foreseeability was a question of fact because a jury reasonably could

infer that promoting opportunities for groups of minors, who are either unsupervised or can easily evade supervision, to spend extended periods of time together in remote and secluded places increased the risk of sexual misconduct to an unreasonable degree and that the defendant knew or should have known of the increased risk. Id., 328. In that case, the plaintiff also presented evidence that the defendant was aware of numerous instances of sexual abuse of participants in the Boy Scouts during scouting activities in the years preceding the patrol leader's sexual abuse of the plaintiff. Id., 331.

Similarly, in *Doe* v. *Saint Francis Hospital & Medical Center*, 309 Conn. 146, 72 A.3d 929 (2013), in which our Supreme Court held that the issue of whether it was reasonably foreseeable that the defendant hospital's failure to supervise a physician who was conducting a growth study within its facility "would result in the sexual abuse of the plaintiff, even though the hospital did not know or have reason to know of [that physician's] pedophilia, presented a question of fact for the jury." Id., 188. The court based its determination on the plaintiff's evidence that, "for years, parents were persuaded to have their children participate in the growth study based in large part on the good name and reputation that the hospital enjoyed in the community," and the hospital "exercised no supervision whatsoever over the study, even though it knew or should have known that [the physician] was touching, photographing and filming the genitalia of naked children in his office, sometimes for hours, without a chaperone present and without any legitimate medical or scientific reason for conducting such a study in the first place." Id., 188–89. The court noted that the plaintiff sought to, and did, persuade the jury that "there was a foreseeable risk that the children who had been volunteered to participate in the study—children who, unbeknownst to their parents, were required to strip naked so that [the physician] could physically examine, photograph and film their genitalia—would be sexually exploited or abused in some manner, such that the hospital was required to take at least *some* precautions to protect this highly vulnerable group of subjects." (Emphasis in original.) Id., 189.

In both cases, the defendants played some role in creating or fostering the circumstances or relationship that gave rise to the harm sustained by the plaintiffs. See also *Gutierrez* v. *Thorne*, 13 Conn. App. 493, 501, 537 A.2d 527 (1988) ("question of foreseeability [was] not such as would lead to only one conclusion; rather, under the circumstances of [the] case, the foreseeability of whether the defendant's conduct in permitting [its employee] to have a key to the plaintiff's apartment would result in a sexual assault . . . [was] a question to be resolved by the trier of fact"). That is not the case here. In the present case, the plaintiffs have alleged that the defendant should have supervised Barer in his

role as a resident advisor or head resident and that its failure to do so created a reasonably foreseeable risk that the plaintiffs would be sexually assaulted by him. They have provided no evidence, nor have they alleged any facts, that the defendant even knew that Barer was in contact with younger teenage boys, particularly in his capacity as a resident advisor or head resident. The plaintiffs have also failed to allege how Barer's position as a resident advisor or head resident distinguished him from any other student residing in the defendant's dormitories in terms of creating a reasonable risk that he would sexually assault younger teenage boys whom he brought to his dormitory room. Indeed, during argument on the motion for summary judgment, the plaintiffs argued that, "because a college student brings three individuals . . . who are younger than college age onto campus . . . [t]hat should give rise to the notice and foreseeability that unacceptable conduct would occur." In the absence of evidentiary support, this bald assertion was insufficient to create a material issue of fact as to whether the defendant's conduct created an unreasonable risk that Barer would bring young teenage boys to his dormitory room and sexually assault them. Because the plaintiffs made no showing of evidentiary facts or presented any evidence outside the pleadings from which material facts alleged in the pleadings can be warrantably inferred as to whether the defendant knew or should have known of the risk to the plaintiffs in this case, the court properly rendered summary judgment in favor of the defendant.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The Young Men's Christian Association of Northern Middlesex County and Andrew Barer also were named as defendants in this action but are not parties to this appeal. Accordingly, any reference herein to the defendant is to Wesleyan University only.

[2] The plaintiffs also alleged in their revised complaint that the defendant "failed to investigate, warn, or inform parents and guardians of children, including those of the plaintiff[s] . . . of the danger that [Barer] posed to children" and "negligently hired [Barer] when a reasonable investigation or background check would have uncovered the danger that [he] posed to children, including the [plaintiffs]." The undisputed evidence submitted by the defendant in support of its motion for summary judgment disclosed that Barer had never been accused of any crime or misconduct during or prior to his tenure as a student of the defendant, so a background check would not have revealed any basis for not hiring him. At oral argument before this court, the plaintiffs conceded that they had no evidence that the defendant had actual knowledge of the danger Barer allegedly posed to the plaintiffs. Thus, the defendant could not have warned the plaintiffs' parents or guardians of such alleged danger, and, therefore, the plaintiffs acknowledged that they were proceeding only on their claims of negligent supervision of Barer in his capacity as a resident advisor or head resident.

[3] On October 2, 2019, the plaintiffs filed a motion for a continuance of the hearing on the defendant's motion for summary judgment to conduct further discovery. In support of that motion, the plaintiffs' attorney attached an affidavit, in which he averred: "[I]n order to adequately respond to the [defendant's] response to the plaintiff's objection to [the defendant's] motion for summary judgment it is necessary to take the deposition of the member of [the defendant] who is best situated to testify as to [the] following: the hiring, training and supervising of . . . resident advisors [at the defendant] for the years 1980 through 1984; the policies and procedures for documenting non-students accessing the buildings on [the defendant's campus] for the

years 1980 through 1984; and reporting procedures for . . . resident advisors [at the defendant who] fail[ed] to comply with regulations and/or guidelines. . . . [S]uch discovery is necessary to establish that there is a genuine issue of material fact as to whether [the defendant] knew or should have known of the risk posed to the plaintiffs and that such risk was foreseeable to the defendant . . . .'' On October 3, 2019, the court summarily denied the plaintiff's motion for a continuance.

The plaintiffs claim on appeal that the court erred in denying their motion for a continuance. We note that, on January 17, 2018, the parties signed a scheduling order providing, inter alia, that the depositions of all fact witnesses would be completed by June 15, 2018. On July 2, 2018, that date was extended to August 31, 2018. On January 4, 2019, the parties entered into a new scheduling order that required the depositions of all fact witnesses to be completed by June 1, 2019. The scheduling order also required all dispositive motions to be filed by April 15, 2019. Despite the foregoing scheduling orders, and the fact that the plaintiffs had filed this action in September, 2017, and thus had more than two years to conduct discovery, they sought additional time to take the deposition of at least one fact witness to support their argument opposing the defendant's motion for summary judgment, and they challenge on appeal the denial of their motion for a continuance to do so. The plaintiffs have failed, however, to argue that the trial court abused its discretion in denying their motion for a continuance, which is the only basis on which such a ruling may be reversed. See, e.g., *Bevilacqua* v. *Bevilacqua*, 201 Conn. App. 261, 268, 242 A.3d 542 (2020) (''Appellate review of a trial court's denial of a motion for a continuance is governed by an abuse of discretion standard that, although not unreviewable, affords the trial court broad discretion in matters of continuances. . . . An abuse of discretion must be proven by the appellant by showing that the denial of the continuance was unreasonable or arbitrary.'' (Internal quotation marks omitted.)). Although the plaintiffs set forth the abuse of discretion standard in their appellate brief and alleged that the trial court abused its discretion in denying their motion for a continuance, they did not brief that claim. Rather, they simply asserted that they needed the discovery they sought because it was ''necessary to establish that there is a genuine issue of material fact as to whether the defendant . . . knew or should have known of the risk posed to the plaintiffs and that such [risk] was foreseeable to the defendant . . . .'' Indeed, at oral argument before this court, when asked if he was claiming that the trial court abused its discretion when it denied the plaintiffs' motion for a continuance, the plaintiffs' attorney responded: ''My argument on that, Your Honor, is that I would have had more information to present to the trial court on the argument for summary judgment had I been allowed to proceed with the depositions. That's as far as an argument as I am going to make today.'' The plaintiffs were on notice from the date of their revised complaint as to what they would have to prove to prevail on their claim of negligent supervision and the need to conduct discovery for that proof. Moreover, the plaintiffs' attorney conceded that there had been previous opportunities to conduct the discovery for which he sought the continuance. The plaintiffs, therefore, cannot prevail on this claim.

[4] Because the court concluded that the alleged incidents were not reasonably foreseeable, it declined to address the defendant's argument that Barer was not its agent, servant, and/or employee at the time they occurred.

---