******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# LATONE JAMES *v.* COMMISSIONER
# OF CORRECTION
## (SC 19787)

Rogers, C. J., and Palmer, Eveleigh, McDonald,
Espinosa, Robinson and Vertefeuille, Js.*

### *Syllabus*

Pursuant to statute (§ 18-98d [a] [1]), an offender may receive credit for presentence confinement, except that "(A) each day of presentence confinement shall be counted only once for the purpose of reducing all sentences imposed after such presentence confinement; and (B) [such credit] shall only apply to a person for whom the existence of a mittimus, an inability to obtain bail or the denial of bail is the sole reason for such person's presentence confinement . . . ."

The petitioner, who had been convicted of felony murder and robbery in the first degree, appealed from the denial of his amended petition for a writ of habeas corpus, asserting, inter alia, that the respondent, the Commissioner of Correction, had improperly calculated the applicable presentence confinement credit. The petitioner, who had been held in lieu of bond on multiple charges following his arrest, was tried and convicted of robbery. The trial court declared a mistrial on the remaining charges, including the felony murder charge, and sentenced the petitioner to twenty years of imprisonment on the robbery conviction. The respondent subsequently credited the robbery sentence for the petitioner's presentence confinement in accordance with § 18-98d (a) (1). On retrial of the felony murder charge, the petitioner filed a motion to dismiss that charge on the ground that the prosecution violated the constitutional protection against double jeopardy. The trial court denied that motion, the petitioner appealed, and this court upheld the denial of that motion. Thereafter, the petitioner was convicted of felony murder and sentenced to fifty years imprisonment, which was to be served concurrently with the robbery sentence. The respondent declined to apply any presentence confinement credit to the felony murder sentence under § 18-98d (a) (1), concluding that any credit for confinement before the imposition of the robbery sentence had already been applied and that any confinement thereafter was for the purpose of serving that existing sentence. The petitioner subsequently filed a habeas petition challenging the respondent's method of calculation, which the habeas court denied. From the habeas court's judgment, the petitioner, on the granting of certification, appealed. *Held* that the respondent's calculation of the presentence confinement credit applicable to the petitioner's felony murder sentence was incorrect: § 18-98d (a) (1) (A) required the transfer of the petitioner's presentence confinement credit from the earlier imposed robbery sentence to the later imposed, concurrent felony murder sentence when the two sentences merged into one effective sentence under one docket number, in light of the ambiguity created by the relationship of § 18-98d to other statutes, the legislative history surrounding its enactment, as well as that of its predecessor statutes, and the legislature's perceived intent; moreover, the petitioner was entitled to presentence confinement credit for the period of time he was pursuing his double jeopardy claim because the denial of such a credit under § 18-98d (a) (1) (B) would have impermissibly burdened the assertion of a constitutional right, and, accordingly, to avoid invalidation of § 18-98d, this court adopted, by way of judicial gloss, a requirement that a person serving a term of imprisonment who exercises his constitutional right to pursue a double jeopardy claim on a charge for which the sentence may run concurrently shall be entitled, under § 18-98d, to a corresponding reduction in any sentence subsequently imposed.

(*Two justices dissenting in one opinion*)

Argued March 30—officially released October 17, 2017

### *Procedural History*

Amended petition for a writ of habeas corpus,

brought to the Superior Court in the judicial district of Tolland and tried to the court, *Oliver*, *J.*, judgment denying the petition, from which the petitioner, on the granting of certification, appealed. *Reversed in part*; *judgment directed*; *further proceedings*.

*Judie L. Marshall*, with whom, on the brief, was *Walter C. Bansley IV*, for the appellant (petitioner).

*Madeline A. Melchionne*, assistant attorney general, with whom, on the brief, were *George Jepsen*, attorney general, and *Terrence M. O'Neill*, assistant attorney general, for the appellee (respondent).

*Opinion*

EVELEIGH, J. The sole issue in this appeal is whether the calculation of presentence confinement credit should be adjusted for concurrent sentences imposed under one docket number but on different dates. The petitioner, Latone James, appeals from the denial of his amended petition for a writ of habeas corpus, which alleged, inter alia, that the calculation of his presentence confinement credit was incorrect. The respondent, the Commissioner of Correction, claims that it calculated the petitioner's presentence confinement credit pursuant to General Statutes § 18-98d (a) (1)[1] and the framework provided by this court in *Harris* v. *Commissioner of Correction*, 271 Conn. 808, 860 A.2d 715 (2004). We agree with the petitioner and, accordingly, reverse the judgment of the habeas court in part.

The record discloses the following facts and procedural history. The petitioner was arrested and charged, under Docket No. CR-95-0235106,[2] with one count of robbery in the first degree in violation of General Statutes (Rev. to 1995) § 53a-134 (a) (2), two counts of assault in the first degree in violation of General Statutes (Rev. to 1995) § 53a-59, and one count of felony murder in violation of General Statutes (Rev. to 1995) § 53a-54c. On March 3, 1995, the petitioner was held in lieu of bond on these charges. Following trial, the jury returned a verdict of guilty on the charge of robbery in the first degree and the trial court declared a mistrial as to the remaining charges. On December 13, 1996, the petitioner was sentenced to twenty years of imprisonment for robbery in the first degree. From the date the trial court imposed bond to the date of sentencing on the robbery conviction, the petitioner was held in the respondent's custody for a total of 651 days. The respondent, accordingly, credited 651 days of presentence confinement to the petitioner's robbery sentence.

The petitioner was retried before a jury on the charge of felony murder under Docket No. CR-95-0235106. See footnote 2 of this opinion. The petitioner had originally moved to dismiss this charge on the ground that retrial violated the prohibition against double jeopardy contained within the fifth amendment to the United States constitution.[3] See footnote 13 of this opinion. The trial court denied that motion, the petitioner appealed, and this court affirmed. *State* v. *James*, 247 Conn. 662, 673–74, 725 A.2d 316 (1999).

On August 5, 1999, while the petitioner was imprisoned for robbery, the jury returned a verdict of guilty on the felony murder charge. On August 13, 1999, the petitioner was sentenced to fifty years of imprisonment for felony murder, to run concurrently with his prior robbery sentence. The petitioner spent 973 days in the respondent's custody from the date he was sentenced for robbery to the date sentenced for felony murder. In

total, the petitioner spent 1624 days in the respondent's custody from the date of he was held in lieu of bond on Docket No. CR95-0235106 to the date he was sentenced for felony murder.

The respondent did not apply any presentence confinement credit to the petitioner's felony murder sentence, except for one day of credit pursuant to § 18-98d (a) (2) (B).[4] The petitioner filed a petition for writ of habeas corpus challenging, inter alia, the respondent's method of calculation. Specifically, the petitioner claimed that the 651 days of credit that had been applied to the robbery sentence should be transferred to the felony murder sentence. The petitioner further claimed that the 973 days he spent imprisoned for the robbery sentence should be credited to his felony murder sentence. After hearing testimony, the habeas court denied the petition. This appeal followed.[5]

The respondent asserts that the 651 days of presentence confinement credit are not applicable to the felony murder sentence. The respondent relies on the language of § 18-98d (a) (1) and this court's decision in *Harris*, wherein this court concluded that presentence confinement credit can be applied only once and cannot be used to reduce a concurrent sentence that is imposed at a later date. *Harris* v. *Commissioner of Correction*, supra, 271 Conn. 822–23. The respondent also claims that the 973 days the petitioner spent incarcerated during the retrial on the felony murder charge could not be claimed as presentence confinement credit because § 18-98d (a) (1) (B) limits application of the credit to those people whose sole reason for being confined is the "existence of a mittimus, an inability to obtain bail or the denial of bail . . . ." Because the petitioner was confined not due to any of those reasons, but because he was serving a sentence for robbery, the respondent claims that § 18-98d (a) (1) does not apply.

We begin our analysis with a discussion of the appropriate standard of review. "Although a habeas court's findings of fact are reviewed under a clearly erroneous standard of review, questions of law are subject to plenary review." *Tyson* v. *Commissioner of Correction*, 261 Conn. 806, 816, 808 A.2d 653 (2002), cert. denied, 538 U.S. 1005, 123 S. Ct. 1914, 155 L. Ed. 2d 836 (2003); see also *Kaddah* v. *Commissioner of Correction*, 324 Conn. 548, 559, 153 A.3d 1233 (2017). The parties do not dispute any of the material facts, and we are asked solely to determine the proper construction of § 18-98d (a) (1).

Therefore, this case presents a question of statutory construction, an issue of law over which we exercise plenary review. *Cales* v. *Office of Victim Services*, 319 Conn. 697, 701, 127 A.3d 154 (2015). In determining the meaning of a statute, we look first to the text of the statute and its relationship to other statutes. General Statutes § 1-2z. If the text of the statute is not plain and

unambiguous, we may consider extratextual sources of information such as the statute's "legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and [common-law] principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *Doe* v. *Boy Scouts of America Corp.*, 323 Conn. 303, 332, 147 A.3d 104 (2016). Our fundamental objective is to ascertain the legislature's intent. Id.

We begin by examining the statutory text. Section 18-98d governs the crediting of presentence confinement time to prisoners. Section 18-98d (a) (1) provides in relevant part: "[a]ny person who is confined to a community correctional center or a correctional institution for an offense committed on or after July 1, 1981, under a mittimus or because such person is unable to obtain bail or is denied bail shall, if subsequently imprisoned, earn a reduction of such person's sentence equal to the number of days which such person spent in such facility from the time such person was placed in presentence confinement to the time such person began serving the term of imprisonment imposed; provided (A) each day of presentence confinement shall be counted only once for the purpose of reducing all sentences imposed after such presentence confinement; and (B) the provisions of this section shall only apply to a person for whom the existence of a mittimus, an inability to obtain bail or the denial of bail is the sole reason for such person's presentence confinement, except that if a person is serving a term of imprisonment at the same time such person is in presentence confinement on another charge and the conviction for such imprisonment is reversed on appeal, such person shall be entitled, in any sentence subsequently imposed, to a reduction based on such presentence confinement in accordance with the provisions of this section. . . ."

Although the petitioner is asserting a general challenge to his presentence confinement credit, the challenge can be split into two separate claims. The first claim is that the 651 days of presentence confinement credit originally applied to the robbery sentence should be transferred to the felony murder sentence. The second claim is that the 973 days he spent in prison serving his sentence for robbery should be converted to presentence confinement credit and applied to his felony murder sentence. We address each of these claims in turn.

Whether the 651 days the petitioner was confined while awaiting his first trial, and which was applied to his robbery sentence, can also be applied to the felony murder sentence implicates § 18-98d (a) (1) (A). Section 18-98d (a) (1) (A) provides that "each day of presentence confinement shall be counted only once for the purpose of reducing *all sentences imposed* after such presentence confinement . . . ." (Emphasis added.)

The plain language of this section, therefore, appears to prohibit the application of the 651 days to the petitioner's sentence for felony murder because it has already been counted for the purpose of reducing his robbery sentence.

The petitioner asserts that if the mistrial had not occurred, "all sentences" for the crimes of robbery and felony murder would have been imposed at once and the 651 days would have been credited toward the sentences for both robbery and felony murder. Because of the mistrial, however, only the robbery sentence was imposed after the petitioner's initial trial, and, by the time he was sentenced for felony murder, the 651 days had already been counted once. The text of § 18-98d does not provide a definition of "all sentences imposed." The use of the term "all" does, however, seem to indicate that the legislature recognized that multiple sentences may follow from one presentence confinement.

We next turn to other related statutes. In the present case, the petitioner's sentences for robbery and felony murder run concurrently. Therefore, General Statutes § 53a-38 (b) is applicable. That statute provides in relevant part that, "[w]here a person is under more than one definite sentence, the sentences shall be calculated as follows: (1) If the sentences run concurrently, the terms merge in and are satisfied by discharge of the term which has the longest term to run . . . ." General Statutes § 53a-38 (b).

Construing § 18-98d in light of § 53a-38 (b) (1) creates further ambiguity. Specifically, it is not clear if merged concurrent sentences should be treated as one complete sentence, or if the two separate sentences have their respective credits applied and then merge. Under the first interpretation, if the two separate sentences are just one merged sentence, all credit accrued from the start of confinement would be applied to the entire merged sentence. In the present case, it would result in applying the 651 day credit to the petitioner's felony murder sentence because it has the longest term to run. Under the second interpretation, if the sentences are two separate sentences which merge into one, then the respondent must calculate the credit separately for each sentence and then determine the longer of the sentences, but because the credit was used for the first sentence, it would not be available when calculating the second sentence. We conclude that, because § 18-98d (a) (1) is subject to two reasonable interpretations, it is ambiguous. Therefore, in accordance with § 1-2z, we turn to the relevant legislative history.

An examination of the brief legislative history of both § 18-98d and its predecessors, General Statutes §§ 18-97 and 18-98, portrays a general legislative intent to credit prisoners for time served in presentence confinement. Section 18-98d was enacted in 1980 as part of the

legislature's attempt to reform the sentencing structure, but there is little history regarding § 18-98d specifically. See generally Conn. Joint Standing Committee Hearings, Judiciary, Pt. 5, 1980 Sess., pp. 1127–1435; see also 23 S. Proc., Pt. 10, 1980 Sess., pp. 3418–32; 23 H.R. Proc., Pt. 14, 1980 Sess., pp. 4294–4356; 23 H.R. Proc., Pt. 24, 1980 Sess., pp. 6997–7006. A series of new legislation, amendments, and repeals were debated, commented on, and eventually enacted pursuant to the sentencing reform, and § 18-98d was one statute among many. See 23 S. Proc., supra, pp. 3428–31, remarks of Senator Salvatore C. DePiano. Section 18-98d is mentioned briefly by Senator DePiano during the Senate Hearings on the bill: "Under the present procedure today, if you are charged with several crimes *and they all have different docket numbers*, every day you wait for trial when you have not made bond, means that you have gotten two or three or four days credit for that one day that you've served and we've eliminated that problem." (Emphasis added.) Id., p. 3429. The legislature specifically placed importance on the different docket numbers associated with various sentences and did not want to give credit for multiple sentences that had different docket numbers. We find these statements are indicative of the legislative intent when § 18-98d was enacted.

Sections 18-97[6] and 18-98,[7] although not operative in the present case, are still persuasive authority in determining the overall intent of granting presentence confinement credit.[8] Section 18-97 addressed presentence confinement credit when a prisoner was held due to a mittimus, and § 18-98 addressed presentence confinement credit due to a denial of bail or inability to obtain bail. Section 18-97 was not discussed at any time in its legislative history; see Conn. Joint Standing Committee Hearings, Judiciary, Pt. 2, 1967 Sess., pp. 554–55, 578–80; 12 S. Proc., Pt. 5, 1967 Sess., p. 2182; 12 H.R. Proc., Pt. 9, 1967 Sess., pp. 3869–73;[9] but has been expanded upon previously by this court in *Delevieleuse* v. *Manson*, 184 Conn. 434, 439 A.2d 1055 (1981).

In *Delevieleuse*, we construed § 18-97 in the petitioner's favor when he tried to apply presentence confinement credit to multiple sentences imposed on the same day. Id., 435–36. The plaintiff had spent 56 days in presentence confinement after being held on a mittimus concerning seven stolen checks. Id., 435. He was sentenced to seven separate sentences of six months for each stolen check. Id. The respondent applied the fifty-six days of presentence confinement credit once for all sentences because there was only one docket number, and the plaintiff argued that § 18-97 required that the credit be applied to each sentence, regardless of the docket number. Id., 435–36.

We referenced the enactment of § 18-98d and the comments by Senator DePiano, specifically his reference to separate docket numbers. Id., 440–42 n.4. The

legislative intent, which we could discern from Senator DePiano's statements, was to move away from the system of awarding multiple credits and to limit the amount of presentence confinement credit granted. Id. Despite Senator DePiano's comments, we said that "[t]he purpose of § 18-97 is to give recognition to the period of presentence time served and to permit the prisoner, in effect, to commence serving his sentence from the time he was compelled to remain in custody due to a mittimus." (Internal quotation marks omitted.) Id., 438.

Section 18-98, unlike § 18-97, is discussed thoroughly in the legislative hearings surrounding its enactment. See Conn. Joint Standing Committee Hearings, Corrections, 1967 Sess., p. 5; 12 S. Proc., supra, pp. 2125–26; 12 H.R. Proc., Pt. 7, 1967 Sess., pp. 3095–98. There was overwhelming approval of the bill, as many of the senators and representatives viewed the existing system as inherently unfair, especially to indigent prisoners. See 12 S. Proc., supra, p. 2126; 12 H.R. Proc., Pt. 7, 1967 Sess., pp. 3095–98. Senator George Gunther said in support of the bill, "I was amazed in visiting our jail cells throughout the state, that we have cases of hold overs sitting in jail as long as a year, and then to find out that they could be brought into court, sentenced and have to serve an additional [five] or [ten], [fifteen] or [twenty] days. I think this is long overdue, it is another asset in our entire corrections program in the state of Connecticut." 12 S. Proc., supra, p. 2126. Representative James J. Kennelly also observed how the bill was "a human bill," because it gave credit to prisoners who were imprisoned for weeks or months awaiting trial. 12 H.R. Proc., Pt. 7, 1967 Sess., p. 3096.

The intent behind § 18-98, then, was to ensure that prisoners were given credit for time served awaiting trial, without any desire to further penalize prisoners who were unable to make bond or were denied bond. There is nothing in the legislative history to indicate that the primary purpose of the statute changed with the enactment of § 18-98d. To the contrary, it seems reasonable that the legislature wished to grant presentence confinement credit to prisoners who were awaiting trial in order to permit those prisoners to serve their sentences from the time they were compelled to remain in custody.

A review of the legislative history reveals no intent by the legislature to treat prisoners in the petitioner's position differently, or somehow not to give them credit for time spent in confinement. Specifically, nothing in the legislative history indicates that the legislature intended to deny prisoners credit for time they spent confined for the sole reason that a mistrial had resulted in sentencing on different days. Put a different way, there is no evidence that the legislature intended to penalize prisoners when the state's failure to prove their guilt beyond a reasonable doubt gives rise to a mistrial

and separates concurrent sentences. Indeed, we reject such an interpretation because it leads to an absurd result. See *Allen* v. *Commissioner of Revenue Services*, 324 Conn. 292, 311, 152 A.3d 488 (2016) (finding well established proposition that "those who promulgate statutes . . . do not intend . . . absurd consequences or bizarre results" [internal quotation marks omitted]), cert. denied, U.S. , 137 S. Ct. 2217, 198 L. Ed. 2d 659 (2017).

On the basis of the language of § 18-98d, the legislative history surrounding its enactment, and its perceived intent in conjunction with the effect it has on the present case, we conclude that the statute requires the transfer of the petitioner's presentence confinement credit of 651 days to the later imposed sentence for felony murder.

The respondent asserts that this court's decision in *Harris* v. *Commissioner of Correction*, supra, 271 Conn. 822–23, requires that the 651 day presentence confinement credit not be applied to the petitioner's sentence for felony murder. In *Harris*, this court refused to permit the transfer of presentence confinement credits to a later imposed sentence that was to run concurrently with an earlier sentence. Id., 809–10. In that case, the petitioner, Randy Harris, was arrested for various charges and held in presentence confinement for 780 days. Id., 811–12. While in prison awaiting sentencing on these charges, Harris was charged with certain separate offenses. Id. His total presentence confinement for the later charges was 751 days, which overlapped with the presentence confinement time associated with the earlier charges. Id. When Harris was sentenced on the earlier charges, the respondent applied a presentence confinement credit of 780 days. Id., 813. Harris subsequently received a sentence on the later charges that was to run concurrently with his earlier sentence. Id., 812. The respondent did not apply any presentence confinement credit to his sentence for the later charges because that credit had already been used on the earlier charges and, according to the respondent, the use of the credit was barred by the plain language of § 18-98d (a) (1) (A). Id., 813. Each sentence imposed was for a different incident, on a different date, and under a different docket number. Id., 811–13.

This court concluded that the respondent's method of calculating the presentence confinement credit was correct. Id., 829. In doing so, we distinguished this court's earlier ruling in *Payton* v. *Albert*, 209 Conn. 23, 547 A.2d 1 (1988), overruled in part on other grounds by *Rivera* v. *Commissioner of Correction*, 254 Conn. 214, 255 n.44, 756 A.2d 1264 (2000). *Harris* v. *Commissioner of Correction*, supra, 271 Conn. 822–23. This court distinguished the circumstances where concurrent sentences were imposed on the same day such as

in *Payton*, and the circumstances where the concurrent sentences were imposed on different days. Id. Particularly, this court observed that, when sentences are imposed on the same date, the credit had not been officially applied to any particular sentence and was unused. Id., 823. The credit could then be applied to whichever sentence will result in the longest term of imprisonment pursuant to § 53a-38 (b). Id. We reasoned that, where sentences are imposed on different days, the credit has already been used on the earlier sentence and is no longer available for the later imposed sentence. Id.

In doing so, this court reasoned that "[t]he merger process does not alter the fact that concurrent sentences remain separate terms of imprisonment which the legislature has permitted to be served at one time." (Internal quotation marks omitted.) Id., 819. Therefore, this court concluded that concurrent sentences imposed on different days must be treated separately for purposes of allocating presentence confinement credit. Id., 820.

In reaching this conclusion, this court relied on several policy reasons for the different treatment of concurrent sentences imposed on the same day as opposed to concurrent sentences imposed on different days. Specifically, this court reasoned as follows: "Indeed, to the extent that the two groups are treated differently, the disparity is likely to have the salutary effect of encouraging defendants to enter pleas with respect to other pending charges and to disclose criminal activities for which charges have not yet been filed so that all outstanding matters may be resolved in a single proceeding. The respondent's methodology also may help to conserve scarce judicial resources and reduce the administrative burden on the state by encouraging defendants involved in multiple proceedings to seek a transfer of all pending actions to a single courthouse for sentencing purposes. Sentencing judges cannot be expected to have knowledge of every recent sentence imposed on a defendant and, therefore, the transfer of all pending actions to a single location would provide the sentencing judge with a better understanding of the defendant's criminal history in order to determine a fair and equitable sentence." Id., 835–36.

The policy considerations that informed this court's decision in *Harris* are inapplicable to the present case. The first reason, that it would encourage defendants to disclose criminal matters to consolidate cases and dispose of them in a single proceeding, does not apply to this appeal. Here, the case would have been disposed all on the same day if the state had not failed to sustain its evidentiary burden, resulting in a mistrial. This fact negates any concern regarding the consolidation of cases. The second reason, to encourage defendants to transfer all pending actions to a single court for sentenc-

ing, is irrelevant to the present case because the criminal trials did take place in one court but on different dates due to the mistrial. The third reason, that it allows a sentencing judge to have all information available to properly sentence the defendant, is similarly irrelevant because the sentencing court here should have had the same procedural history available to it. This was all one case; the robbery was the predicate to the petitioner's conviction for felony murder.

*Harris* is, therefore, distinguishable from the present case. In *Harris*, the presentence confinement credit had been accruing at the same time for two completely separate charges that were prosecuted separately. Id., 811–12. In the present case, however, presentence confinement credit was not accruing for two separate prosecutions but for one prosecution for felony murder that included the predicate lesser included offenses of robbery and assault. If the mistrial had not occurred, there would have been one credit applied to a total sentence for felony murder. Therefore, we conclude that the reasoning of *Harris* is inapplicable to the present case.[10]

We conclude that § 18-98d requires the transfer of credits from an earlier imposed sentence to a later one when the two sentences merge into one effective sentence under one docket number. Accordingly, we conclude that the respondent should have applied the 651 days of presentence confinement credit to the petitioner's sentence for felony murder.

The petitioner also claims that he should receive credit for the 973 days spent while imprisoned for robbery prior to being sentenced for felony murder, including the time he was pursuing his double jeopardy appeal. The respondent counters that § 18-98d (a) (1) (B) precludes the petitioner from receiving credit toward his felony murder sentence for any days after he was sentenced for robbery. For the reasons which follow, we agree, in part, with the petitioner.

The petitioner's claim requires us to interpret § 18-98d (a) (1) (B). Section § 18-98d (a) (1) (B) provides that "the provisions of this section shall only apply to a person for whom the existence of a mittimus, an inability to obtain bail or the denial of bail is the sole reason for such person's presentence confinement, except that if a person is serving a term of imprisonment at the same time such person is in presentence confinement on another charge and the conviction for such imprisonment is reversed on appeal, such person shall be entitled, in any sentence subsequently imposed, to a reduction based on such presentence confinement in accordance with the provisions of this section." The plain language of § 18-98d (a) (1) (B) indicates that if a person is being held for any reason other than being held on a mittimus, inability to obtain bail or denial of bail, then that person cannot receive presentence

confinement credit for that period of time.

After oral argument in this court, we issued an order directing the parties to file supplemental briefs addressing the following issue: "Does the well established principle that this court should try, whenever possible, to construe statutes to avoid a constitutional infirmity, but may not do so by rewriting the statute or eschewing its plain language . . . lead to a different construction of . . . § 18-98d than that advanced by the [respondent]?" See *Walsh* v. *Jodoin*, 283 Conn. 187, 199, 925 A.2d 1086 (2007); see also *Boyd* v. *Lantz*, 487 F. Supp. 2d 3 (D. Conn. 2007). In his supplemental brief, the respondent asserts that allowing the petitioner to receive presentence confinement credit in the present case would undermine the meaning and clear intent of the legislature.[11] In his supplemental brief, the petitioner claims that this court should construe § 18-98d consistent with *Boyd* v. *Lantz*, supra, 3, and that such a construction would be consistent with the plain language of the statute and the legislative intent.[12]

In the present case, the significant delay between the petitioner's sentencing for the robbery conviction in 1995 and his subsequent sentencing on felony murder in 1999 was caused by his decision to challenge the reprosecution on the ground that it violated the prohibition against double jeopardy contained within the fifth amendment to the United States constitution. See footnote 3 of this opinion. "It is well established that this court has a duty to construe statutes, whenever possible, to avoid constitutional infirmities . . . . [W]hen called [on] to interpret a statute, we will search for an effective and constitutional construction that reasonably accords with the legislature's underlying intent. . . . This principle directs us to search for a judicial gloss . . . that will effect the legislature's will in a manner consistent with constitutional safeguards." (Citations omitted; internal quotation marks omitted.) *State* v. *Cook*, 287 Conn. 237, 245, 947 A.2d 307 (2008).

In our search for the constitutional construction of § 18-98d, we find the analysis of the United States District Court for the District of Connecticut in *Boyd* v. *Lantz*, supra, 487 F. Supp. 2d 3, persuasive. Indeed, as this court recognized in the petitioner's underlying criminal appeal; *State* v. *James*, supra, 247 Conn. 672; the procedural history of *Boyd* and that in the present case are very similar.

In *Boyd*, the United States District Court for the District of Connecticut set forth the following relevant facts and procedural history at issue in that case. "[The petitioner, Terrence Boyd, was] first arrested and placed in custody on December 15, 1986. Following a jury trial in the Connecticut Superior Court, he was convicted of burglary, larceny, and felony murder. On January 21, 1988, he was sentenced to forty-five years of incarceration for felony murder, fifteen years for

burglary, and five years for larceny, with the sentences to run concurrently. On March 6, 1990, the Connecticut Supreme Court vacated Boyd's felony murder conviction. He remained incarcerated on the burglary and larceny convictions. The state brought a new felony murder charge against Boyd, which he challenged pretrial on double jeopardy grounds in state court. After losing his final appeal in state court, he filed a federal habeas petition in the [United States] District Court for the District of Connecticut that reiterated his double jeopardy claim. The district court denied Boyd's petition and the Second Circuit affirmed that decision. . . . On October 7, 1996, the [United States] Supreme Court denied certiorari to his habeas petition." (Citation omitted; footnotes omitted.) *Boyd* v. *Lantz*, supra, 487 F. Supp. 2d 5–6.

In calculating the presentence confinement credit that Boyd was to receive for time served to reduce a second felony murder sentence following retrial, applying § 18-98d, the respondent excluded the period "from March 7, 1990, the day after his first felony murder conviction was vacated, to January 3, 1997, the date Boyd finished serving his sentence for burglary." Id., 6. Boyd challenged the respondent's denial of credit for the time he was serving his sentence for burglary while pursuing his challenge to reprosecution for felony murder through a state habeas petition. Id. The habeas court denied the petition, the Appellate Court affirmed, and this court denied certiorari. Id., 7; see also *Boyd* v. *Commissioner of Correction*, 84 Conn. App. 22, 851 A.2d 1209 (2004), cert. denied, 271 Conn. 929, 859 A.2d 583 (2004); *Boyd* v. *Warden*, Superior Court, Judicial District of Tolland, Docket No. CV-00-0003130-S (November 15, 2002) (33 Conn. L. Rptr. 399).

In affirming the habeas court's denial of Boyd's petition, the Appellate Court relied on *Steve* v. *Commissioner of Correction*, 39 Conn. App. 455, 469, 665 A.2d 168, cert. denied, 235 Conn. 929, 667 A.2d 555 (1995). The Appellate Court reasoned that *Steve* required the respondent to credit Boyd for time served while he challenged his initial felony murder conviction but did not require the respondent to credit Boyd for the time he was challenging the retrial on double jeopardy grounds. *Boyd* v. *Commissioner of Correction*, supra, 84 Conn. App. 29. The Appellate Court concluded that Boyd's double jeopardy challenge was a "collateral . . . attack after the underlying conviction was clearly vacated and [Boyd] was no longer incarcerated on that conviction . . . ." Id., 30. Therefore, the Appellate Court concluded that, because Boyd was challenging his reprosecution, not his former conviction, *Steve* and § 18-98d prohibited him from receiving "double credit" for the time served while pursuing his double jeopardy challenge. Id., 29.

Thereafter, Boyd filed a writ of habeas corpus in

federal court claiming that the respondent violated his due process rights by applying § 18-98d to deny him credit toward his felony murder sentence for the time he was incarcerated on his larceny and burglary convictions, but was challenging his reprosecution for felony murder. *Boyd* v. *Lantz*, supra, 487 F. Supp. 2d 7. Specifically, Boyd claimed that the application of § 18-98d to him unconstitutionally burdened his right to bring a preconviction double jeopardy challenge to his reprosecution. Id.

The United States District Court for the District of Connecticut analyzed Boyd's claim under the test established in *Joyner* v. *Dumpson*, 712 F.2d 770 (2d Cir. 1983). The court concluded that a fundamental right was at stake because the double jeopardy clause "protects a criminal defendant's right to challenge a prosecution in advance of trial." *Boyd* v. *Lantz*, supra, 487 F. Supp. 2d 11. The court further reasoned that, because the application of § 18-98d "to a defendant in Boyd's position will result in a substantially longer period of incarceration should the defendant choose to exercise his double jeopardy rights . . . the statute, as applied in this narrow factual context, burdens such a defendant's fundamental due process right to challenge his [reprosecution]. See *United States* v. *Goodwin*, 457 U.S. 368, 372, 102 S. Ct. 2485, 73 L. Ed. 2d 74 (1982) ('[t]o punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic [sort]'); *North Carolina* v. *Pearce*, 395 U.S. 711, 724, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969) ('the imposition of . . . a punishment penalizing those who choose to exercise constitutional rights would be patently unconstitutional' . . . ); *United States* v. *Jackson*, 390 U.S. 570, 583, 88 S. Ct. 1209, 20 L. Ed. 2d 138 (1968) ('Congress cannot impose . . . a penalty in a manner that needlessly penalizes the assertion of a constitutional right. . . . A procedure need not be inherently coercive in order that it be held to impose an impermissible burden upon the assertion of a constitutional right.'); *Griffin* v. *California*, 380 U.S. 609, 614, 85 S. Ct. 1229, 14 L. Ed. 2d 106 (1965) (holding unconstitutional, in the context of the [f]ifth [a]mendment privilege against self-incrimination, 'a penalty imposed by courts for exercising a constitutional privilege' because '[i]t cuts down on the privilege by making its assertion costly')." *Boyd* v. *Lantz*, supra, 11–12. The court also concluded that "this burden on double jeopardy rights is not justified by a sufficiently compelling government interest" and that, "[w]hile the general validity of Connecticut's interest in preventing 'double counting' is undisputed, the record does not provide sufficient justification for the burden imposed on Boyd's exercise of this particular fundamental right. Unlike many other fundamental constitutional rights that may be fully exercised and vindicated [postconviction], the aspect of the double jeopardy right that prohibits [reprosecution] and

allows for interlocutory appeals of the denial of that claim is what makes this case different." Id., 12–13.

On the basis of the court's well reasoned opinion in *Boyd* v. *Lantz*, supra, 487 F. Supp. 2d 3, we conclude that interpreting § 18-98d so as to deny the petitioner in the present case presentence confinement credit for the time he was pursuing his double jeopardy appeal would render the application of that statute to him unconstitutional. Accordingly, to avoid invalidation of § 18-98d, we adopt, by way of judicial gloss, a requirement that if a person serving a term of imprisonment exercises his or her constitutional right to pursue a double jeopardy claim on a charge for which the sentence may run concurrently, that person shall be entitled, in any sentence subsequently imposed, to a reduction based on such presentence confinement in accordance with the provisions of § 18-98d. See *Roth* v. *Weston*, 259 Conn. 202, 233, 789 A.2d 431 (2002) ("[o]rdinarily, [i]f literal construction of a statute raises serious constitutional questions, we are obligated to search for a construction that will accomplish the legislature's purpose without risking the statute's invalidity" [internal quotation marks omitted]).

This judicial gloss is consistent with the legislative purpose behind § 18-98d. Indeed, the plain language of § 18-98d demonstrates that the legislature understood that a person's right to pursue an appeal must be recognized. Section 18-98d (a) (1) (B) also contemplates circumstances where time in prison could be converted to presentence confinement credit. If someone is appealing their conviction while serving their sentence and the appeal is successful, subparagraph (B) states: "such person shall be entitled, in any sentence subsequently imposed, to a reduction based on such presentence confinement in accordance with the provisions of this section." In enacting § 18-98d, the legislature considered that there are circumstances where a person would be released from his or her sentence due to errors and that such individuals should be credited with the time spent imprisoned. The legislature contemplated circumstances where periods of incarceration pursuant to a criminal sentence could be converted to presentence confinement credit.

Accordingly, we conclude that the petitioner is entitled to presentence confinement credit from the date he filed the motion to dismiss on ground of double jeopardy through the date that this court affirmed the judgment of the trial court on that motion, February 16, 1999.[13] As stated previously in this opinion, the petitioner is also entitled to presentence confinement credit from the date he was held in lieu of bond on the underlying charges, March 3, 1995, through the date of his sentencing for robbery, December 13, 1996.

The judgment of the habeas court is reversed with respect to the issue of presentence confinement credit

and the case is remanded with direction to grant the petition for a writ of habeas corpus as to that issue and to order the respondent to credit the petitioner's sentence in accordance with the preceding paragraph.

In this opinion ROGERS, C. J., and PALMER, McDONALD and ROBINSON, Js., concurred.

* This case originally was scheduled to be argued before a panel of this court consisting of Chief Justice Rogers and Justices Palmer, Eveleigh, McDonald, Espinosa, Robinson and Vertefeuille. Although Justice Robinson was not present when the case was argued before the court, he has read the briefs and appendices, and listened to a recording of the oral argument prior to participating in this decision. The listing of justices reflects their seniority status on this court as of the date of oral argument.

[1] We note that, although § 18-98d has been amended since the events underlying the petition; see, e.g., Public Acts 2001, No. 01-78; those amendments have no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of the statute.

[2] We note that, although the suffix changed at various stages during the underlying proceedings, there was only one docket number associated with these charges. As counsel for the respondent conceded at trial on the habeas petition, the change in suffix is not relevant to the questions presented in this appeal.

[3] "The double jeopardy clause of the fifth amendment to the United States constitution provides: [N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb . . . . This constitutional provision is applicable to the states through the due process clause of the fourteenth amendment." (Internal quotation marks omitted.) *State* v. *Padua*, 273 Conn. 138, 172 n.39, 869 A.2d 192 (2005).

[4] General Statutes § 18-98d (a) (2) (B) provides: "Any person convicted of any offense and sentenced prior to October 1, 2001, to a term of imprisonment, who was confined in a correctional facility for such offense on October 1, 2001, shall be presumed to have been confined to a police station or courthouse lockup in connection with such offense because such person was unable to obtain bail or was denied bail and shall, unless otherwise ordered by a court, earn a reduction of such person's sentence in accordance with the provisions of subdivision (1) of this subsection of one day."

[5] The habeas court denied the petition for a writ of habeas corpus and then granted the petition for certification to appeal pursuant to General Statutes § 52-470 (g). The petitioner subsequently appealed from the judgment of the habeas court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[6] General Statutes § 18-97 provides: "Any person receiving a fine or a sentence to a correctional institution or a community correctional center for an offense committed prior to July 1, 1981, shall receive credit towards any portion of such fine as is not remitted or any portion of such sentence as to which execution is not suspended for any days spent in custody under a mittimus as a result of any court proceeding for the offense or acts for which such fine or sentence is imposed, provided he shall conform to the rules of the institution. Upon notification from the Commissioner of Correction, the clerk of the court shall enter such credit upon the order in the case of a fine, and upon the mittimus in the case of a sentence and it shall be the duty of the agency or person that held such person under such mittimus to inform the clerk of the court of the proper amount of such credit. In the case of a fine each credit day shall be computed at the rate of ten dollars. In no event shall credit be allowed in excess of the fine or sentence actually imposed."

[7] General Statutes § 18-98 provides: "Any person who has been denied bail or who has been unable to obtain bail and who is subsequently imprisoned for an offense committed prior to July 1, 1981, is entitled to commutation of his sentence by the number of days which he spent in a community correctional center from the time he was denied or was unable to obtain bail to the time he was so imprisoned. The Commissioner of Correction shall, if such person has conformed to the rules of the institution, credit such person with the number of days to which the supervising officer of the correctional center where such person was confined while awaiting trial certifies such person was confined between the denial of bail to him or his inability to obtain bail and his imprisonment."

[8] The substance of § 18-97 and 18-98, while still operative for crimes committed prior to July 1, 1981, formed the basis for § 18-98d, which applies to crimes committed on or after July 1, 1981. See *Payton* v. *Albert*, 209 Conn. 23, 30, 547 A.2d 1 (1988), overruled in part on other grounds by *Rivera* v. *Commissioner of Correction*, 254 Conn. 214, 756 A.2d 1264 (2000).

[9] Section 18-97 was enacted as part of a larger bill that created the bail commissioner and current bail bond system that exists in Connecticut. The discussion throughout the hearings involved issues with the bond system and never mentioned § 18-97.

[10] The respondent urges us to follow our line of decisions in prior cases involving § 18-98d, including *Payton* and *Harris*. These cases are, however, factually distinguishable from the present case and do not address the specific problem of separate sentences imposed on different days under one docket number for a continuing prosecution for felony murder. In each case cited by the respondent, the charges were predicated on different events on different dates and were specifically under different docket numbers. See *Washington* v. *Commissioner of Correction*, 287 Conn. 792, 818–23, 950 A.2d 1220 (2008); *Hunter* v. *Commissioner of Correction*, 271 Conn. 856, 860, 860 A.2d 700 (2004); *Cox* v. *Commissioner of Correction*, 271 Conn. 844, 846, 860 A.2d 708 (2004); *Harris* v. *Commissioner of Correction*, supra, 271 Conn. 811; *Payton* v. *Albert*, supra, 209 Conn. 23. None of these cases deals with the situation currently before this court, namely, an ongoing prosecution under one docket number where sentences were imposed on different dates due to a mistrial.

[11] The respondent also asserts that "an important distinction between the [petitioner in *Boyd*] and the petitioner here is that the [petitioner in *Boyd*] actually served over two years of his forty-five year sentence for murder before his sentence was vacated and his double jeopardy challenge was raised." The respondent does not, however, explain why this factual distinction is relevant. Indeed, the petitioner in *Boyd*, like the petitioner in the present case, sought "credit for the duration of his double jeopardy challenge." *Boyd* v. *Lantz*, supra, 487 F. Supp. 2d 7. Therefore, we conclude that the fact that the petitioner in *Boyd* had served some of his sentence before the opportunity arose to bring a double jeopardy challenge is irrelevant to whether he would receive credit for the period during his double jeopardy challenge.

[12] To the extent that the petitioner attempts to raise a constitutional challenge for the first time in his supplemental brief, because we conclude that the petitioner is entitled to presentence confinement credit for the period he was pursuing his double jeopardy appeal, we need not reach that issue.

[13] We note that the date of the petitioner's motion to dismiss in the underlying criminal proceedings is not apparent on the face of the present record. The length of this credit, therefore, is to be determined by the habeas court on remand.

————————————————